**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT ALLEN POYSON,
*Petitioner-Appellant*,

v.

CHARLES L. RYAN,
*Respondent-Appellee.*

No. 10-99005

D.C. No.
2:04-cv-00534-NVW

ORDER AND
AMENDED OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
February 15, 2012—San Francisco, California

Filed March 22, 2013
Amended November 7, 2013

Before: Sidney R. Thomas, Raymond C. Fisher,
and Sandra S. Ikuta, Circuit Judges.

Order;
Dissent to Order by Chief Judge Kozinski;
Opinion by Judge Fisher;
Partial Concurrence and Partial Dissent by Judge Thomas

# SUMMARY[*]

## Habeas Corpus/Death Penalty

The panel issued an order denying a petition for panel rehearing and rehearing en banc, filed an amended opinion, and ordered that no further petitions will be entertained.

In the amended opinion, the panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition by an Arizona state prisoner challenging a conviction and capital sentence for murder.

The panel first held that the Arizona Supreme Court did not deny petitioner his right to individualized sentencing by applying an unconstitutional causal nexus test to potentially mitigating evidence, because the panel could not presume a constitutional violation from an ambiguous record that did not contain a "clear indication" that the court applied such a test as an unconstitutional screening mechanism, as opposed to a permissible means of determining the weight or significance of mitigating evidence.

The panel next denied relief on petitioner's claim that the Arizona courts failed to consider his history of substance abuse as a nonstatutory mitigating factor. The panel explained that the state courts considered the evidence and found it wanting as a matter of fact because it failed to prove a history of substance abuse, and that the state supreme court

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

did not misconstrue the state trial court's findings so as to deny petitioner of meaningful appellate review.

Finally, the panel agreed with the district court that petitioner's ineffective assistance of counsel claim is procedurally defaulted because it is fundamentally different from the claim presented in state court such that the state courts had no meaningful opportunity to consider it.

Concurring in part and dissenting in part, Judge Thomas would hold that the state court unconstitutionally excluded mitigating evidence from consideration because it was not causally related to the crimes.

Chief Judge Kozinski dissented from the denial of rehearing en banc, joined by Judges Pregerson, Reinhardt, Thomas, McKeown, Wardlaw, W. Fletcher, Paez, Berzon, Murguia, Christen and Watford. Chief Judge Kozinski adopted the explanation in Judge Thomas' amended dissent that the majority's decision, to declare the record too ambiguous to interpret, contravenes Supreme Court authority and undermines Circuit law. Chief Judge Kozinski pointed out that the court must "suture [a] fissure in our circuit law," regarding the standard of review of a state court's application of the causal nexus test.

**COUNSEL**

Jon M. Sands, Federal Public Defender, Michael L. Burke (argued), Assistant Federal Public Defender, Ngozi V. Ndulue, Assistant Federal Public Defender, Phoenix, Arizona, for Petitioner-Appellant.

Thomas C. Horne, Attorney General, Kent Cattani, Division Chief, Criminal Appeals/Capital Litigation Division, Jon G. Anderson (argued), Assistant Attorney General, Capital Litigation Section, Phoenix, Arizona, for Respondent-Appellee.

---

**ORDER**

Judge Thomas has voted to grant the petition for panel hearing and petition for rehearing en banc. Judges Fisher and Ikuta have voted to deny the petition for panel rehearing. Judge Ikuta has voted to deny the petition for rehearing en banc and Judge Fisher has so recommended.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35(f).

Appellant's petition for panel rehearing and rehearing en banc, filed April 12, 2013, is **denied.** Chief Judge Kozinski's dissent from denial of en banc rehearing is filed concurrently with this Order.

* * * * *

This opinion filed at 711 F.3d 1087 (9th Cir. 2013) is amended, and an Amended Opinion is filed concurrently with this Order.

No further petitions will be entertained.

---

Chief Judge KOZINSKI, with whom Judges PREGERSON, REINHARDT, THOMAS, MCKEOWN, WARDLAW, W. FLETCHER, PAEZ, BERZON, MURGUIA, CHRISTEN and WATFORD join, dissenting from the order denying the petition for rehearing en banc:

Just how obvious does a state court's constitutional error have to be when a man's life is on the line? According to the panel majority, indisputably obvious, which is "beyond a reasonable doubt" stood on its head. Judge Thomas's powerful dissent explains how the majority's decision to "throw up [its] hands and declare the record too ambiguous to definitively interpret one way or the other," Amended Dissent at 49 n.3, contravenes Supreme Court authority and undermines our circuit law. *See Tennard* v. *Dretke*, 542 U.S. 274 (2004); *Eddings* v. *Oklahoma*, 455 U.S. 104 (1982); *Lopez* v. *Ryan*, 630 F.3d 1198 (9th Cir. 2011). No need to repeat his arguments; we adopt them, chapter and verse.

The issue will not go away. There are many more cases in the pipeline where state courts in our circuit applied a causal nexus test before affirming a sentence of death. We can't long continue down the path forged by the majority, which forces panels to choose between two materially

different standards of review in causal nexus cases: the newly minted "clear indication" standard and our traditional approach of scrutinizing the record and asking whether it "appears" that a constitutional violation occurred. *Styers* v. *Schriro*, 547 F.3d 1026, 1035 (9th Cir. 2008).

We must suture this fissure in our circuit law, and soon. Tragically for Robert Poyson, when we do so, it will come too late to save him. But come it will.

---

## OPINION

FISHER, Circuit Judge:

Robert Allen Poyson was convicted of murder and sentenced to death in 1998. After pursuing direct review and seeking postconviction relief in state court, he filed a habeas petition in federal district court. The district court denied the petition, and Poyson appeals.

Poyson raises three claims on appeal, each of which has been certified by the district court pursuant to Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c): (1) the Arizona courts applied an unconstitutional causal nexus test to mitigating evidence; (2) the Arizona courts failed to consider mitigating evidence of his history of substance abuse; and (3) his trial counsel provided ineffective assistance of counsel during the penalty phase of his trial by failing to investigate the possibility that he suffered from fetal alcohol spectrum disorder. We conclude the first two claims are without merit and the third is procedurally defaulted. Accordingly, we affirm.

The Arizona Supreme Court did not deny Poyson his right to individualized sentencing by applying an unconstitutional causal nexus screening test to potentially mitigating evidence. Under our case law, we cannot hold that a state court employed an unconstitutional nexus test "[a]bsent a clear indication in the record that the state court applied the wrong standard." *Schad v. Ryan*, 671 F.3d 708, 724 (9th Cir. 2011) (per curiam). The record here shows that the Arizona Supreme Court considered the absence of a causal connection to the murders in evaluating Poyson's mitigating evidence, but it does not reveal whether the court applied a nexus test as an unconstitutional screening mechanism or as a permissible means of determining the weight or significance of mitigating evidence. *See Lopez v. Ryan*, 630 F.3d 1198, 1203–04 (9th Cir. 2011). We therefore must hold that the Arizona Supreme Court's decision was not "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d)(1). *See Schad*, 671 F.3d at 723–24.

We also deny habeas relief on Poyson's claim that the Arizona courts failed to consider his history of substance abuse as a nonstatutory mitigating factor. Poyson argues that the state courts unconstitutionally refused to *consider* mitigating evidence, a claim arising under *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982). The state courts, however, did consider the evidence. They simply found it wanting as a matter of fact, finding that the evidence failed to prove a history of substance abuse. There was therefore no constitutional violation under *Lockett* and *Eddings*. Nor was there a constitutional violation under *Parker v. Dugger*, 498 U.S. 308, 321 (1991). The state supreme court did not misconstrue the state trial court's findings, so it did not deprive Poyson of meaningful appellate review of his death sentence.

Finally, we agree with the district court that Poyson's ineffective assistance of counsel claim is procedurally defaulted because it is fundamentally different from the claim presented in state court. Although it is true that "new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not 'fundamentally alter the legal claim already considered by the state courts.'" *Beaty v. Stewart*, 303 F.3d 975, 989–90 (9th Cir. 2002) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)). Poyson's federal petition raises a theory of deficient performance – failure to investigate and present mitigating evidence of fetal alcohol spectrum disorder – that the state courts had no "meaningful opportunity to consider." *Vasquez*, 474 U.S. at 257. The claim is therefore procedurally defaulted.

## I. BACKGROUND

### A. The Crimes

Poyson was born in August 1976. The facts of his crimes, committed in 1996, were summarized as follows by the Arizona Supreme Court in *State v. Poyson*, 7 P.3d 79, 83 (Ariz. 2000).

Poyson met Leta Kagen, her 15 year-old son, Robert Delahunt, and Roland Wear in April 1996. Poyson was then 19 years old and homeless. Kagen allowed him to stay with her and the others at their trailer in Golden Valley, near Kingman, Arizona. In August of the same year, Kagen was introduced to 48 year-old Frank Anderson and his 14 year-old girlfriend, Kimberly Lane. They, too, needed a place to live, and Kagen invited them to stay at the trailer.

Anderson informed Poyson that he was eager to travel to Chicago, where he claimed to have organized crime connections. Because none of them had a way of getting to Chicago, Anderson, Poyson and Lane formulated a plan to kill Kagen, Delahunt and Wear in order to steal the latter's truck.

On the evening of August 13, 1996, Lane lured Delahunt into a small travel trailer on the property, ostensibly for sex. There, Anderson commenced an attack on the boy by slitting his throat with a bread knife. Poyson heard Delahunt's screams and ran to the travel trailer. While Anderson held Delahunt down, Poyson bashed his head against the floor. Poyson also beat Delahunt's head with his fists, and pounded it with a rock. This, however, did not kill Delahunt, so Poyson took the bread knife and drove it through his ear. Although the blade penetrated Delahunt's skull and exited through his nose, the wound was not fatal. Poyson thereafter continued to slam Delahunt's head against the floor until Delahunt lost consciousness. According to the medical examiner, Delahunt died of massive blunt force head trauma. In all, the attack lasted about 45 minutes.

After cleaning themselves up, Poyson and Anderson prepared to kill Kagen and Wear. They first located Wear's .22 caliber rifle. Unable to find ammunition, Poyson borrowed two rounds from a young girl who lived next door, telling her that Delahunt was in the desert surrounded by snakes and the bullets were needed to rescue him. Poyson loaded the rifle and tested it for about five minutes to make sure it would function properly. He then stashed it near a shed. Later that evening, he cut the telephone line to the trailer so that neither of the remaining victims could call for help.

After Kagen and Wear were asleep, Poyson and Anderson went into their bedroom. Poyson first shot Kagen in the head, killing her instantly. After quickly reloading the rifle, he shot Wear in the mouth, shattering Wear's upper right teeth. A struggle ensued, during which Poyson repeatedly clubbed Wear in the head with the rifle. The fracas eventually moved outside. At some point, Anderson threw a cinder block at Wear, hitting him in the back and knocking him to the ground. While the victim was lying there, Poyson twice kicked him in the head. He then picked up the cinder block and threw it several times at Wear's head. After Wear stopped moving, Poyson took his wallet and the keys to Wear's truck. To conceal the body, Poyson covered it with debris from the yard. Poyson, Anderson and Lane then took the truck and traveled to Illinois, where they were apprehended several days later.

## B. Trial and Conviction

A grand jury indicted Poyson on three counts of first degree murder, one count of conspiracy to commit murder and one count of armed robbery. The jury convicted on all counts in March 1998, following a six-day trial.

## C. Sentencing

### 1. *Mitigation Investigation*

Following the guilty verdicts, the state trial court approved funds to hire a mitigation specialist to assist in preparing for Poyson's sentencing. Counsel retained investigator Blair Abbott.

In a June 1998 memorandum, Abbott informed counsel that Poyson's mother, Ruth Garcia (Garcia), used drugs during the first trimester of her pregnancy and recommended that counsel investigate the possibility that Poyson suffered brain damage as a result. The memorandum advised counsel that "one of the significant issues should be the hard core drug abuse of both [of Poyson's] parents, preconception and in the first trimester of Ruth's pregnancy." Abbott wrote that "Ruth Garcia's heavy drug abuse in the pre pregnancy and early on in the pregnancy undoubtedly caused severe damage to her unborn child."

In September 1998, Abbott mailed trial counsel "Library & Internet research regarding drug & alcohol fetal cell damage; reflecting how these chemicals when taken in the first trimester [a]ffect subsequent intelligence, conduct, emotions, urges etc [sic] as the child grows into adulthood."

2. *Presentence Investigation Report*

The probation office prepared a presentence investigation report in July 1998. Poyson told the probation officer that he had a bad childhood because he was abused by a series of stepfathers, who subjected him to physical, mental and emotional abuse. Poyson also said he suffered from impulsive conduct disorder, which was diagnosed when he was 13. Poyson would not answer any questions on his substance abuse history or juvenile record.

3. *Presentencing Hearing*

In October 1998, the trial court held a one-day presentencing hearing. Poyson's trial counsel called three witnesses to present mitigating evidence: his aunt, Laura

Salas, his mother, Ruth Garcia, and the mitigation investigator, Blair Abbott. Counsel also introduced 56 exhibits. Poyson did not testify. The witnesses testified about Poyson's drug and alcohol abuse and the mental and physical abuse inflicted on Poyson by his stepfather, Guillermo Aguilar, and maternal grandmother, Mary Milner. They also testified that Poyson's stepfather, Sabas Garcia (Sabas), committed suicide in 1988, and that Sabas' death had a devastating effect on Poyson. They further testified that Garcia used drugs and alcohol during the first three months of her pregnancy with Poyson.

### 4. *Poyson's Sentencing Memorandum*

In early November 1998, Poyson filed a sentencing memorandum urging the court to find three statutory and 25 nonstatutory mitigating circumstances.[1] As relevant here, Poyson argued that his history of drug and alcohol abuse, troubled childhood and personality disorders constituted both statutory and nonstatutory mitigating circumstances.

---

[1] At the time of Poyson's sentencing, Arizona law required the sentencing judge to impose a sentence of death if the court found one or more aggravating circumstances and "no mitigating circumstances sufficiently substantial to call for leniency." Ariz. Rev. Stat. Ann. § 13-703(E) (1998). The law enumerated 10 aggravating circumstances, *see id.* § 13-703(F), and five statutory mitigating circumstances – including diminished capacity, duress, minor participation and the defendant's age, *see id.* § 13-703(G). The sentencing court also was required to consider any *nonstatutory* mitigating circumstances offered by the defendant – i.e., "any factors proffered by the defendant or the state which are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense." *Id.*

*Substance Abuse:* Poyson argued that his substance abuse was a statutory mitigating circumstance because it impaired his capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law at the time of the murders. *See* Ariz. Rev. Stat. Ann. § 13-703(G)(1) (1998). In the alternative, he argued that, even if his substance abuse was not causally related to the murders, it constituted a nonstatutory mitigating circumstance. In support of these arguments, Poyson emphasized his biological parents' use of drugs and alcohol at the time of his conception, his mother's use of drugs and alcohol during pregnancy, an incident in which Poyson was involuntarily intoxicated at the age of three or four, Poyson's abuse of alcohol beginning at age 13 and Poyson's five-month placement at WestCare, a residential treatment facility, for substance abuse treatment in 1992, when he was 15. Poyson also pointed to evidence that he used PCP two days before the murders, used alcohol the night before the murders, used marijuana the day of the murders and had suffered a PCP flashback during Delahunt's murder.

*Troubled Childhood:* Poyson argued that his troubled childhood was a statutory mitigating circumstance because it affected his behavior at the time of the murders. In the alternative, he argued that his troubled childhood constituted a nonstatutory mitigating circumstance. Poyson emphasized his mother's use of drugs and alcohol during the first trimester of pregnancy. He argued that alcohol and drug use during pregnancy can cause brain damage and birth defects and lead a child to engage in delinquent and criminal behavior. He also attached to the sentencing memorandum several scientific articles on fetal alcohol syndrome. The memorandum pointed out that Poyson never knew his biological father, lacked a stable home life, was physically

and mentally abused by several adults (including Aguilar and Milner), was devastated by Sabas' suicide and was sexually abused and sodomized at a young age.[2]  Poyson emphasized that his delinquent behavior and substance abuse began shortly after the death of Sabas and the sexual assault.

*Mental Health Issues:*  The sentencing memorandum argued that Poyson suffered from several personality disorders, constituting a nonstatutory mitigating circumstance.  The memorandum pointed to a 1990 psychiatric evaluation by Dr. Bruce Guernsey.  According to the sentencing memorandum, Guernsey diagnosed Poyson with severe "conduct disorder," reported that Poyson exhibited symptoms of antisocial behavior, "manic depression" or "impulsive conduct disorder" and recommended that Poyson be prescribed medication to control his behavior.  Poyson also pointed to a 1990 Juvenile Predisposition Investigation by Nolan Barnum.  Barnum too recommended that Poyson be prescribed medication to control his behavior.  A 1993 psychological evaluation performed by Jack Cordon and Ronald Jacques from the State Youth Services Center in St. Anthony, Idaho, diagnosed Poyson with "mild mood disturbance."  Dr. Celia A. Drake, who Poyson's counsel retained to perform a forensic evaluation of Poyson, diagnosed "Adjustment Disorder with depressive mood, mild intensity," and "Anti-social Personality Disorder."  Dr. Drake found Poyson's overall intellectual functioning to be "in the low average range."

---

[2] Poyson presented evidence that he was sexually assaulted by a neighbor on one occasion shortly after Sabas' death.

5.  *Sentencing Hearing and Imposition of Sentence*

The trial court held a sentencing hearing and imposed sentence in late November 1998.

The court found that the state had proved, beyond a reasonable doubt, three aggravating circumstances for the murders of Delahunt and Wear: the murders were committed in expectation of pecuniary gain, the murders were especially cruel and multiple homicides committed during the same offense. *See* Ariz. Rev. Stat. Ann. § 13-703(F)(5), (6), (8) (1998). The court found two aggravating circumstances applicable to Kagen's murder: pecuniary gain and multiple homicides. *See id.* § 13-703(F)(5), (8).

The court found that Poyson failed to prove any statutory mitigating factors. Poyson's difficult childhood and mental health issues were not statutory mitigating factors under § 13-703(G)(1) because they did not significantly impair Poyson's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.[3] The court explained:

> There has certainly been evidence that the defendant had gone through a turbulent life, perhaps had mental-health issues that would distinguish him from the typical person on the street.

---

[3] *See* Ariz. Rev. Stat. Ann. § 13-703(G)(1) (1998) ("Mitigating circumstances [include] [t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.").

> Listening to his description of how these murders were committed, based upon a description of somewhat a methodical carrying out of a plan, the Court sees absolutely nothing on the record, in this case, to suggest the applicability of this mitigating circumstance.

Turning to nonstatutory mitigating factors, the court first explained the three-step analysis it used to evaluate each nonstatutory mitigating circumstance proffered by Poyson: "[1] to analyze whether the defense has shown this fact by a preponderance of evidence, and then if they have, [2] to determine whether I would assign that any weight as a mitigating factor, and of course, for any that . . . pass both of those two tests, [3] I have to weigh them all along with the other factors in the final [sentencing] determination in this case."

*Mental Health Issues:*   The court rejected Poyson's mental health issues as a nonstatutory mitigating factor at the second step in the analysis. The court found that Poyson had proven that he suffered from personality disorders, but gave them no weight because they were not causally related to the murders:

> [T]he defendant had some mental health and psychological issues. I think . . . the defense has established that there were certain . . . personality disorders that the defendant, in fact, may have been suffering from.
>
> The Court, however, does not find that they rise to the level of being a mitigating

factor because I am unable to draw any connection whatsoever with such personality disorders and the commission of these offenses.[4]

*Troubled Childhood:* The court similarly rejected Poyson's difficult childhood as a nonstatutory mitigating factor. At step one, the court found that the "defense has shown that defendant suffered a dysfunctional childhood, that he was subjected to physical and sexual abuse, and that he was subjected to certain levels of mental abuse." At step two, however, the court gave these circumstances no mitigating weight because they were not causally connected to the murders: "The Court finds absolutely nothing in this case to suggest that his latter conduct was a result of his childhood."[5]

---

[4] The court rejected evidence of Poyson's low IQ for similar reasons. At the first step in the analysis, the court found that "there is certain evidence in this case that would support the proposition that the defendant's mental capacity may be diminished, at least compared to the norm in the population, and that his I.Q. may be low, at least compared to the norm in the population." The court, however, gave this circumstance no mitigating weight in light of planning and sophistication that went into the crimes – "certain prep[ar]atory steps that were taken – admittedly, not overly-sophisticated, but attempts were made to do certain things, to disable warning systems to enable these murders to be committed and to get away with the loot that was the purpose of the murders; specifically, the vehicle."

[5] The court also found that "the defense has established, by a preponderance of the evidence, that the defendant lost a parent figure and was subjected to sexual abuse at a relatively young age." The court rejected this factor at step two, however, because it was "not convinced that there is any connection between that abuse, that loss, and his subsequent criminal behavior."

*Substance Abuse:* Finally, the court rejected Poyson's history of substance abuse at both steps one and two in the analysis: Poyson failed to establish a significant history of drug or alcohol abuse and, even if he could do so, the court would have given the evidence no weight because he failed to establish a causal connection between the substance abuse and the crimes. The court said:

> The argument is made that the defendant was subjected to alcohol abuse and drug abuse. Other than very vague allegations that he has used alcohol in the past or has used drugs in the past, other than a fairly vague assertion that he was subject to some sort of effect of drugs and/or alcohol at the time, that these offenses were committed, I really find very little to support the allegation that the defendant has a significant alcohol and/or drug abuse, and again, going back to the methodical steps that were taken to murder three people to get a vehicle to get out of Golden Valley, it's very difficult for me to conclude that the defendant's ability to engage in goal-oriented behavior was, in any way, impaired at the time of the commission of these offenses.

The court found only one nonstatutory mitigation factor – Poyson's cooperation with law enforcement. The court concluded that this one mitigating factor was insufficiently substantial to call for leniency and imposed a sentence of death.

### 6. *Arizona Supreme Court Decision*

The Arizona Supreme Court affirmed Poyson's conviction and sentence on direct appeal. *See State v. Poyson*, 7 P.3d 79 (Ariz. 2000). As required by Arizona law, the court "independently review[ed] the trial court's findings of aggravation and mitigation and the propriety of the death sentence." Ariz. Rev. Stat. Ann. § 13-703.01(A) (2000).

The court agreed with the trial court that Poyson's drug use was not a statutory mitigating circumstance under § 13-703(G)(1). *See Poyson*, 7 P.3d at 88–89. In the court's view, there was "scant evidence that he was actually intoxicated on the day of the murders." *Id.* at 88. "Although Poyson purportedly used both marijuana and PCP 'on an as available basis' in days preceding these crimes, the only substance he apparently used on the date in question was marijuana," and Poyson "reported smoking the marijuana at least six hours before killing Delahunt and eleven hours before the murders of Kagen and Wear." *Id.* The evidence that Poyson experienced a PCP flashback during the murder of Delahunt was not credible, and even if the flashback occurred, it lasted only a "few moments." *Id.* at 88–89. Poyson was "not under the influence of PCP at any other time." *Id.* at 89. Poyson's claims of substantial impairment were also belied by his deliberate actions, including concocting a ruse to obtain bullets from a neighbor, testing the rifle to make sure it would work properly when needed, cutting the telephone line and concealing the crimes. *See id.*

*Substance Abuse:* The court also agreed with the trial court that Poyson's substance abuse, mental health and abusive childhood were not nonstatutory mitigating circumstances. As to substance abuse, the court agreed with

the trial court that Poyson had failed at step one because the evidence did not show a history of drug or alcohol abuse:

> The trial judge refused to accord any weight to the defendant's substance abuse as a nonstatutory mitigating circumstance. It characterized the defendant's claims that he had used drugs or alcohol in the past or was under the influence of drugs on the day of the murders as little more than "vague allegations." As discussed above, we agree.

*Id.* at 90.

*Mental Health Issues:* With respect to mental health issues, the court agreed with the trial court that Poyson's personality disorders, although proven at step one, were entitled to no weight at step two because they were not causally connected to the murders:

> The trial court found that Poyson suffers from "certain personality disorders" but did not assign any weight to this factor. Dr. Celia Drake diagnosed the defendant with antisocial personality disorder, which she attributed to the "chaotic environment in which he was raised." She found that there was, among other things, no "appropriate model for moral reasoning within the family setting" to which the defendant could look for guidance. However, we find no indication in the record that "the disorder controlled [his] conduct or impaired his mental capacity to such a degree that leniency is required." *State v. Brewer*,

170 Ariz. 486, 505, 826 P.2d 783, 802 (1992);
*see also* [*State v. Medina*, 193 Ariz. 504, 517,
975 P.2d 94, 107 (1999)] (holding that the
defendant's personality disorder "ha[d] little
or no mitigating value" where the defendant's
desire to emulate his friends, not his mental
disorder, was the cause of his criminal
behavior). We therefore accord this factor no
mitigating weight.

*Id.* at 90–91.

*Troubled Childhood:* The court also agreed with the trial
court's assessment of Poyson's troubled childhood. The
court found that Poyson established an abusive childhood at
step one, but gave this consideration no weight at step two
because of the absence of a causal nexus:

Defendant presented some evidence that as a
youngster he was physically and mentally
abused by several stepfathers and his maternal
grandmother. He also self-reported one
instance of sexual assault by a neighbor.
Again, however, defendant did not show that
his traumatic childhood somehow rendered
him unable to control his conduct. Thus, the
evidence is without mitigating value.

*Id.* at 91.

The court found three aggravating factors (pecuniary gain,
murder committed in an especially cruel manner and multiple
homicides), one statutory mitigating factor (Poyson's age)
and three nonstatutory mitigating factors (cooperation with

law enforcement, potential for rehabilitation and family support). *See id.* at 90–91.**⁶** The court concluded that the mitigating evidence was not sufficiently substantial to call for leniency and affirmed the sentence of death. *See id.* at 91–92; Ariz. Rev. Stat. Ann. § 13-703.1(B) (2000).

## D. State Postconviction Review

The Arizona Superior Court denied Poyson's petition for postconviction relief in 2003. The court provided a reasoned decision on Poyson's claim of penalty phase ineffective assistance of counsel (his third claim in this appeal) but not on Poyson's claims that the Arizona courts failed to consider relevant mitigating evidence (his first and second claims on appeal). In 2004, the Arizona Supreme Court summarily denied Poyson's petition for review.

## E. Federal District Court Proceedings

Poyson filed a federal habeas petition in 2004. In 2010, the district court denied the petition. The court rejected on the merits Poyson's claims that the Arizona courts failed to consider mitigating evidence. The court concluded that Poyson's penalty phase ineffective assistance of counsel claim was procedurally defaulted because it was "fundamentally different than [the claim] presented in state court." Poyson timely appealed.

---

**⁶** The Arizona Supreme Court thus found three more mitigating factors than the trial court found. The appellate court nonetheless agreed with the trial court that a death sentence was warranted.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). We review de novo the district court's denial of Poyson's petition for habeas corpus, and we review the district court's findings of fact for clear error. *See Brown v. Ornoski*, 503 F.3d 1006, 1010 (9th Cir. 2007). Dismissals based on procedural default are reviewed de novo. *See Robinson v. Schriro*, 595 F.3d 1086, 1099 (9th Cir. 2010). We address Poyson's three claims in turn.

## III. DISCUSSION

### A. Causal Nexus Test

Poyson argues that the Arizona courts applied an unconstitutional causal nexus test to mitigating evidence of his mental health issues, traumatic childhood and substance abuse history, in violation of his Eighth and Fourteenth Amendment rights to an individualized sentencing. He contends that the state courts improperly refused to consider this evidence in mitigation because he failed to establish a causal connection between the evidence and the murders. He argues that the state courts' actions violate his constitutional rights as recognized in *Tennard v. Dretke*, 542 U.S. 274, 283–87 (2004), *Smith v. Texas*, 543 U.S. 37, 45 (2004) (per curiam), and several earlier decisions. These decisions hold that requiring a defendant to prove a nexus between mitigating evidence and the crime is "a test we never countenanced and now have unequivocally rejected." *Smith*, 543 U.S. at 45.

Because Poyson filed his federal habeas petition after April 24, 1996, he must not only prove a violation of these

rights but also satisfy the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Fenenbock v. Dir. of Corr. for Cal.*, 681 F.3d 968, 973 (9th Cir. 2012).

Under AEDPA, we may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We review the last reasoned state court decision addressing the claim, which for Poyson's causal nexus claim is the Arizona Supreme Court's decision affirming Poyson's death sentence on direct appeal. *See Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010). Poyson relies on AEDPA's "contrary to" prong, arguing that the Arizona Supreme Court's decision in *State v. Poyson*, 7 P.3d 79 (Ariz. 2000), was contrary to *Lockett v. Ohio*, 438 U.S. 586 (1978), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

1. *Exhaustion*

As a threshold matter, we agree with Poyson that he has fully exhausted this claim. The state argues that in state court Poyson raised a causal nexus claim with respect to only mental health issues and his troubled childhood, not his history of substance abuse. We disagree. Having reviewed the record, we conclude that Poyson exhausted the claim with respect to all three categories of mitigating evidence. *See Powell v. Lambert*, 357 F.3d 871, 874 (9th Cir. 2004) ("A

petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts.").

### 2. *Whether the Arizona Supreme Court's Decision Was Contrary to Clearly Established Federal Law*

*Lockett*, *Eddings* and *Penry* held that "a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty." *Penry*, 492 U.S. at 318. "[I]t is not enough simply to allow the defendant to present mitigating evidence to the sentencer." *Id.* at 319. "The sentencer must also be able to consider and give effect to that evidence in imposing sentence." *Id.* "[T]he sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime." *Id.* (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring)) (internal quotation marks omitted).

Under these decisions, a state court may not treat mitigating evidence of a defendant's background or character as "irrelevant or nonmitigating as a matter of law" merely because it lacks a causal connection to the crime. *Towery v. Ryan*, 673 F.3d 933, 946 (9th Cir. 2012) (per curiam). The sentencer may, however, consider "causal nexus . . . as a factor in determining the weight or significance of mitigating evidence." *Lopez v. Ryan*, 630 F.3d 1198, 1204 (9th Cir. 2011). "The . . . use of the nexus test in this manner is not unconstitutional because state courts are free to assess the weight to be given to particular mitigating evidence." *Schad*

*v. Ryan*, 671 F.3d 708, 723 (9th Cir. 2011) (per curiam). As the Court explained in *Eddings*:

> Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence. . . . The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.

*Eddings*, 455 U.S. at 113–15.

Consistent with these principles, we have granted habeas relief when state courts have applied a causal nexus test as a screening mechanism to deem evidence irrelevant or nonmitigating as a matter of law. In *Styers v. Schriro*, 547 F.3d 1026 (9th Cir. 2008) (per curiam), we granted relief where the state court held that a defendant's post-traumatic stress disorder could not constitute mitigation unless the defendant could connect the condition to the crime. *See id.* at 1035. In *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010), we granted relief where the state court held that, "[w]ithout a showing of some impairment at the time of the offense, drug use cannot be a mitigating circumstance of any kind." *Id.* at 1270–71 (alteration in original) (quoting *State v. Williams*, 904 P.2d 437, 453 (Ariz. 1995)) (internal quotation marks omitted).

In contrast, we have refused to find a constitutional violation when the state court employed a causal nexus test as

a permissible weighing mechanism. *See Towery*, 673 F.3d at 945–46. We have also denied relief when the record contains no indication that the state court employed a causal nexus test at all. *See Schad*, 671 F.3d at 724 (denying relief where "there is no indication that the state courts applied a nexus test, either as a method of assessing the weight of the mitigating evidence, or as an unconstitutional screening mechanism to prevent consideration of any evidence"); *Lopez*, 630 F.3d at 1203–04 (denying relief where the state courts made no mention of a causal nexus test, because "there is no reason to infer unconstitutional reasoning from judicial silence").

Here, the record shows that the Arizona Supreme Court applied a causal nexus test to Poyson's evidence of mental health issues and a difficult childhood, *see Poyson*, 7 P.3d at 90–91, but does not reveal whether the court considered the absence of a causal nexus as a permissible weighing mechanism, as in *Towery*, or as an unconstitutional screening mechanism, as in *Styers* and *Williams*. This ambiguity precludes us from granting habeas relief. We held in *Schad* that, "[a]bsent a clear indication in the record that the state court applied the wrong standard, we cannot assume the courts violated *Eddings*'s constitutional mandates." 671 F.3d at 724. That principle governs here: we cannot assume the state court applied the wrong standard. The Arizona Supreme Court's decision therefore was not contrary to clearly established federal law under § 2254(d)(1).

We reach the same conclusion with respect to the Arizona Supreme Court's evaluation of Poyson's evidence of a history of substance abuse. The state court rejected this evidence at step one in its analysis, finding as a matter of fact that Poyson had failed to establish a significant history of substance abuse

by a preponderance of the evidence. The record does not indicate that the court considered this evidence at step two, or that, if it did so, it employed an impermissible causal nexus test in doing so. *See Poyson*, 7 P.3d at 90. The court's treatment of Poyson's substance abuse evidence thus was likewise not contrary to *Lockett*, *Eddings* and *Penry*.

We recognize the possibility that the Arizona Supreme Court applied an unconstitutional causal nexus test. The record, however, contains no clear indication that the court did so. We may not presume a constitutional violation from an ambiguous record. We therefore hold that the district court properly denied habeas relief on Poyson's causal nexus claim. *See Schad*, 671 F.3d at 724.

The dissent contends that *Schad*'s presumption that state courts follow constitutional requirements should not apply here for six reasons. First, the dissent argues that we should find error in Poyson's case based on the Arizona Supreme Court's use of an unconstitutional causal nexus test in other cases at the time of Poyson's sentencing. Dissent 43. This argument might be persuasive if the Arizona courts *consistently* applied an unconstitutional causal nexus test during the relevant period. That is not the case, however. As we recognized in *Lopez*,

> Our review of the case law confirms Arizona's unsettled past with respect to this issue. Some cases decided prior to *Tennard* applied a causal nexus requirement in an impermissible manner. Other cases, however, properly looked to causal nexus only as a factor in determining the weight or significance of mitigating evidence.

630 F.3d at 1203–04 (footnote omitted); *see also Towery*, 673 F.3d at 946 (also recognizing that the Arizona Supreme Court's decisions have been inconsistent on this question). Under these circumstances, the most we can say is that Arizona's troublesome history *weakens* the presumption that the Arizona Supreme Court followed the law in Poyson's case; it does not flip the presumption altogether.[7]

Second, the dissent argues that the presumption that state courts follow constitutional mandates applies only to a silent record and not to the interpretation of a state court's language. Dissent 47. This argument overlooks the Supreme Court's decision in *Woodford v. Visciotti*, 537 U.S. 19 (2002). There, the state court applied an arguably erroneous test for determining prejudice under *Strickland v. Washington*, 466 U.S. 468 (1984). Some language in the state court's decision cited the test correctly, whereas other language misstated the test. *See Visciotti*, 537 U.S. at 22–24. We held that the state court had applied an erroneous test, but the Supreme Court reversed, holding that our "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Id.* at 24. After *Visciotti*, therefore, we must consider the presumption that state courts follow the law not only when we draw inferences from the court's silence but also when, as here, we construe a state court's ambiguous language.

---

[7] Under circuit precedent, moreover, our focus must be on the record in *this* case. *See Lopez*, 630 F.3d at 1204 ("In light of this backdrop, which highlights a range of treatment of the nexus issue, there is no reason to infer unconstitutional reasoning from judicial silence. Rather, we must look to what the record actually says."); *Towery*, 673 F.3d at 946. We reject the suggestion that because other Arizona cases may have involved causal nexus error we should presume that this case did as well.

Third, quoting Justice O'Connor's concurrence in *Eddings*, the dissent argues that "the qualitatively different nature of a death sentence requires reviewing courts 'to remove any legitimate basis for finding ambiguity concerning the factors actually considered by the trial court.'" Dissent 47 (quoting *Eddings*, 455 U.S. at 119 (O'Connor, J., concurring)). A majority of the Court, however, has never adopted Justice O'Connor's suggestion that ambiguity alone requires habeas relief. Unlike *Eddings*, moreover, this case is governed by AEDPA, and AEDPA does not allow us to presume from an ambiguous record that the state court applied an unconstitutional standard. To the contrary, such a "readiness to attribute error" would be flatly "incompatible with § 2254(d)'s highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Visciotti*, 537 U.S. at 24 (citation and internal quotation marks omitted); *cf. Lopez v. Schriro*, 491 F.3d 1029, 1037 (9th Cir. 2007) (holding that alleged ambiguity in the state court's language was insufficient "to overcome the presumption that the state court knew and followed the law").

Fourth, according to the dissent, our holding imposes a heightened standard of proof on the petitioner and means that "a habeas petitioner can secure relief only by conclusively establishing the absence of *any* ambiguity in the state court record." Dissent 49. Not so. The problem in this case is not the existence of *some* ambiguity in the record; it is that the record is *insolubly* ambiguous, *cf. Doyle v. Ohio*, 426 U.S. 610, 617 (1976), meaning that the record is inconclusive as to whether the Arizona Supreme Court applied a nexus test as a permissible weighing mechanism or as an impermissible screening mechanism. As we have noted elsewhere, a party who bears the burden of proving a fact by a preponderance of

the evidence cannot carry that burden by relying on an inconclusive record. *See Young v. Holder*, 697 F.3d 976, 989 (9th Cir. 2012) (en banc) (explaining that "the burden of persuasion . . . determines 'which party loses if the evidence is closely balanced'" (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005))). Our opinion merely adheres to that principle. Because Poyson bears the burden of proof, by a preponderance of the evidence, he cannot prevail on the record before us. *See Schad*, 671 F.3d at 724 ("Absent a clear indication in the record that the state court applied the wrong standard, we . . . must hold there was no constitutional error in the [state] courts' consideration of the mitigating evidence."). We have not imposed a heightened burden of proof.

Fifth, the dissent argues that this case is "substantially indistinguishable" from *Styers*, where we granted habeas relief. Dissent 50. In *Styers*, the Arizona Supreme Court rejected evidence that the defendant suffered from post-traumatic stress disorder as a result of combat service in Vietnam, stating: "This could also, in an appropriate case, constitute mitigation. . . . However, two doctors who examined defendant could not connect defendant's condition to his behavior at the time of the conspiracy and the murder." *Styers*, 547 F.3d at 1035 (quoting *State v. Styers*, 865 P.2d 765, 777 (Ariz. 1993)). The state court's language in *Styers* plainly implied that the evidence *could* be mitigating only if it was causally connected to the crime – i.e., that the evidence *could not* be mitigating absent a causal connection to the crime. The record in *Styers*, therefore, contained a clear indication that the state court applied an unconstitutional causal nexus test – it was not insolubly ambiguous. *See Eddings*, 455 U.S. at 114 (holding that "the sentencer [may not] refuse to consider, *as a matter of law*, any relevant

mitigating evidence"); *Towery*, 673 F.3d at 946 (explaining that the Eighth Amendment prohibits "treating the evidence as irrelevant or nonmitigating as a matter of law"). The record here contains no comparable indication. The court did not say that Poyson's evidence *could not* be mitigating; it said only that the evidence *was not* mitigating, a conclusion that could as easily reflect permissible weighing as impermissible screening.

Finally, the dissent argues that the state court violated the Eighth Amendment by discarding Poyson's evidence "before the critical stage of its analysis – the final balancing of mitigating and aggravating circumstances that determined his sentence." Dissent 54. The state court, however, had discretion to accord Poyson's evidence no weight. *See Edding*s, 455 U.S. at 114–15; *Schad*, 671 F.3d at 723. Assuming the state court permissibly accorded the evidence no weight, we do not see how the court could have committed constitutional error by excluding the evidence from the ultimate sentencing determination. Had the state court afforded the evidence some weight, but declined to consider it in the final sentencing analysis, this would be a different case.

At bottom, the ambiguous record in this case is no different from those in *Schad* and *Lopez*, two cases in which we declined to grant habeas relief. In both of those cases, we denied relief notwithstanding Arizona's troublesome history of applying an unconstitutional causal nexus test – and notwithstanding the existence of an ambiguous record. Here too, in the absence of a clear indication in the record that the state court applied an unconstitutional standard, we see no alternative but to affirm.

## B.  Failure to Consider Substance Abuse

At sentencing, Poyson presented evidence of a history of drug and alcohol abuse, but the state trial court and the state supreme court declined to treat the evidence as a nonstatutory mitigating factor.  The trial court found that Poyson had presented only "very vague allegations that he has used alcohol . . . or . . . drugs in the past," and found "very little to support the allegation that the defendant has a significant alcohol and/or drug abuse" history.  The supreme court agreed that Poyson's claims to have "used drugs or alcohol in the past" were "little more than 'vague allegations.'" *Poyson*, 7 P.3d at 90.

Poyson contends the state courts' conclusions that he provided only "vague allegations" of substance abuse were unreasonable determinations of the facts under 28 U.S.C. § 2254(d)(2) and violated his constitutional rights under *Lockett*, 438 U.S. at 605, *Eddings*, 455 U.S. at 112, and *Parker v. Dugger*, 498 U.S. 308, 321 (1991).  We disagree.

Poyson's claim – that "[b]ecause his death sentence is based upon [an] unreasonable determination of facts, [he] is entitled to habeas relief" – misunderstands the law.  Even assuming that the state courts' determination that Poyson provided only "vague allegations" of substance abuse was an unreasonable determination of the facts under § 2254(d)(2), an issue we need not reach, Poyson's claim fails because he cannot demonstrate that his constitutional rights were violated.  *See Wilson v. Corcoran*, 131 S. Ct. 13, 17 (2010) (per curiam) (holding that while § 2254(d)(2) relieves a federal court of AEDPA deference when the state court makes an unreasonable determination of facts, it "does not repeal the command of § 2254(a) that habeas relief may be

afforded to a state prisoner 'only on the ground' that his custody violates federal law"); *see also Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) (en banc) (holding that AEDPA does not "require any particular methodology for ordering the § 2254(d) and § 2254(a) determination[s]"). An unreasonable determination of the facts would not, standing alone, amount to a constitutional violation under *Lockett*, *Eddings* or *Parker*.

*Lockett* invalidated an Ohio death penalty statute that precluded the sentencer from considering aspects of the defendant's character or record as a mitigating factor. *See* 438 U.S. at 604. *Eddings* held that a sentencer may not refuse to consider, as a matter of law, any relevant mitigating evidence. *See* 455 U.S. at 113–15. Here, the state courts considered Poyson's evidence of substance abuse, but found it wanting as a matter of fact and that Poyson failed to prove a history of substance abuse. Thus, there was no constitutional violation under *Lockett* and *Eddings*.

Nor has Poyson shown a constitutional violation under *Parker*. There, the state supreme court reweighed aggravating and mitigating circumstances before affirming a death sentence. *See Parker*, 498 U.S. at 321–22. The court's reweighing, however, was premised on its erroneous assumption that the state trial court had found that there were no mitigating circumstances. *See id.* The Supreme Court held that the state supreme court's action deprived the defendant of "meaningful appellate review," and thus that the sentencing violated the defendant's right against "the arbitrary or irrational imposition of the death penalty." *Id.* at 321. In Poyson's view, *Parker* stands for the broad proposition that, "[w]hen a state court's imposition of the death penalty is based not on the characteristics of the

accused and the offense but instead on a *misperception of the record*, the defendant is not being afforded the consideration that the Constitution requires." In *Parker*, however, the state supreme court had misconstrued the state trial court's findings, something that did not occur here. *Parker* does not hold that a state court's erroneous factual finding in assessing mitigation evidence necessarily amounts to a constitutional violation. Rather, it suggests the opposite:

> This is not simply an error in assessing the mitigating evidence. Had the Florida Supreme Court conducted its own examination of the trial and sentencing hearing records and concluded that there were no mitigating circumstances, a different question would be presented. Similarly, if the trial judge had found no mitigating circumstances and the Florida Supreme Court had relied on that finding, our review would be very different.

*Id.* at 322.

In sum, we hold that Poyson is not entitled to habeas relief because he has not shown a constitutional violation under *Lockett*, *Eddings* or *Parker*. Because Poyson has raised arguments under only *Lockett*, *Eddings* and *Parker*, we need not decide whether, or under what circumstances, a state court's erroneous factfinding in assessing mitigating evidence can itself rise to the level of a constitutional violation.

## C. Penalty Phase Ineffective Assistance of Counsel

In his federal habeas petition, Poyson argued that he received ineffective assistance of counsel during the penalty phase of his trial because his trial counsel failed to investigate the possibility that he suffered from fetal alcohol spectrum disorder (FASD). The district court ruled that Poyson failed to present this claim to the state courts, and hence that the claim was procedurally defaulted. Poyson challenges that ruling on appeal. We review de novo. *See Robinson*, 595 F.3d at 1099.

A state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *Weaver v. Thompson*, 197 F.3d 359, 363–64 (9th Cir. 1999); 28 U.S.C. § 2254(b)(1)(A). This rule "reflects a policy of federal-state comity, an accommodation of our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard*, 404 U.S. at 275 (citations and internal quotation marks omitted). "A petitioner can satisfy the exhaustion requirement by providing the highest state court with a fair opportunity to consider each issue before presenting it to the federal court." *Weaver*, 197 F.3d at 364.

"[A] petitioner may provide further facts to support a claim in federal district court, so long as those facts do not 'fundamentally alter the legal claim already considered by the state courts.'" *Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260

(1986)).[8]  "[T]his rule allows a petitioner who presented a particular [ineffective assistance of counsel] claim, for example that counsel was ineffective in presenting humanizing testimony at sentencing, to develop additional facts supporting that particular claim." *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005) (citing *Weaver*, 197 F.3d at 364).  "This does not mean, however, that a petitioner who presented any ineffective assistance of counsel claim below can later add unrelated alleged instances of counsel's ineffectiveness to his claim." *Id.* (citing *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (en banc)).

## 1.  *State Proceedings*

In his state habeas petition, Poyson raised two ineffective assistance of counsel claims relevant here.  In the first claim, Poyson alleged that trial counsel "was ineffective because he failed to request the appointment of experts in the field of mental health early in the case."  He alleged that the investigation for both phases of the trial should have begun "immediately" upon counsel's appointment, including "the immediate appointment of experts for both parts of the trial."  Counsel's failure "to immediately secure the appointment of mental health experts . . . prejudiced" him in two ways.  First, it precluded him from presenting a defense of "diminished capacity" with respect to the Delahunt murder during the guilt phase of the trial.  Second, "the failure of counsel to immediately pursue mitigation caused the loss of mitigating information" that could have been presented at sentencing.

---

[8] As the Supreme Court has recently clarified, these factual allegations must be based on the "record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Poyson presented a report by a neuropsychologist retained during the state habeas proceedings, Robert Briggs, Ph.D. According to Poyson, Briggs' report showed that Poyson "was brain-damaged" at the time of the murders, but had since "recovered, due to his long stay first in jail, then on condemned row, without chemical or physical insult to his brain." In Poyson's view, "the report leaves no doubt that neurophyschological testing shows that he was impaired at the time of the crime." This mitigating evidence had been "lost forever."

In the state petition's second claim, Poyson alleged that trial counsel failed to properly present mitigation and psychological evidence because counsel "did nothing to show the trial court how [his] abusive childhood caused, or directly related to, [his] conduct during the murders." He alleged that trial counsel were deficient because they were "required to make some attempt to correlate Mr. Poyson's physically and psychologically abusive background with his behavior," because "a connection between the two would be much more powerful in mitigation than the abuse standing alone."

### 2. *Federal Petition*

Poyson's federal petition presented a substantially different claim – counsel's failure to investigate Poyson's possible fetal alcohol spectrum disorder. Poyson alleged that trial counsel were ineffective because they "failed to make any effort to investigate and develop" evidence that Poyson suffered from FASD. He alleged that defense counsel "failed to investigate the obvious possibility that [he] suffered from FASD," made "no effort" to "pursue this fertile area of mitigation" and "ignored obvious evidence that [he] was exposed to drugs and alcohol *in utero*." Poyson further

alleged that he was prejudiced by counsel's deficient performance:

> Their failure to adequately investigate and substantiate [evidence that Petitioner was exposed to drugs and alcohol *in utero*] profoundly prejudiced Petitioner. Adequate explanation during the pre-sentence hearing of the effect of FASD on Petitioner's brain would likely have convinced the trial court that Petitioner had a lesser degree of culpability.

3. *Analysis*

The district court concluded that the claim raised in the federal petition had not been fairly presented to the Arizona courts:

> This Court concludes that the claim asserted in the instant amended petition is fundamentally different than that presented in state court. Petitioner's argument in support of [this claim] is based entirely on trial counsel's alleged failure to investigate and develop mitigation evidence based on Petitioner's *in utero* exposure to drugs and alcohol. This version of Petitioner's sentencing [ineffective assistance of counsel] claim has never been presented to the Arizona courts. While it is true that new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already

considered by the state courts." *Beaty v. Stewart*, 303 F.3d 975, 989–90 ([9th Cir.] 2002) (citing *Vasquez*, 474 U.S. at 260). To do so deprives the state court of "a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez*, 474 U.S. at 257. Here, Petitioner is not simply proffering additional evidentiary support for a factual theory presented to the state court. Rather, he is alleging an entirely new theory of counsel ineffectiveness; one that has not previously been presented in state court.

We agree. Poyson presented not only new facts in support of a claim presented to the state court, but also a fundamentally new theory of counsel's ineffectiveness – one that the Arizona courts lacked "a meaningful opportunity to consider." *Vasquez*, 474 U.S. at 257. The district court therefore properly dismissed Poyson's penalty phase ineffective assistance of counsel claim as procedurally defaulted.

**AFFIRMED.**

THOMAS, Circuit Judge, concurring in part and dissenting in part:

The Arizona Supreme Court unconstitutionally excluded mitigating evidence from its consideration because the evidence was not causally related to the crimes. As a result, Poyson was deprived of his right to an individualized capital sentencing determination under the Eighth and Fourteenth Amendments. *Penry v. Lynaugh* (*Penry I*), 492 U.S. 302, 317 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002); *Eddings v. Oklahoma*, 455 U.S. 104, 110–12 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978). Because the majority's contrary conclusion cannot be reconciled with controlling Supreme Court precedent, I respectfully dissent.

# I

"[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Lockett*, 438 U.S. at 604 (alteration in original) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976)). Accordingly, the Supreme Court has held since 1978 that a defendant facing a capital sentence must have the opportunity to present all relevant evidence in mitigation. *See id.* at 604–05. Merely admitting the evidence at the penalty phase does not satisfy the constitutional mandate. Rather, to ensure that a sentence of death reflects "a reasoned *moral* response to a defendant's background, character, and crime," *Penry I*, 492 U.S. at 328 (emphasis in original) (quoting *Franklin v. Lynaugh*, 487 U.S. 164, 184 (1988)

(O'Connor, J., concurring in the judgment)), the procedure for evaluating mitigating evidence must ensure that the sentencer is "able to consider *and give effect to* that evidence in imposing sentence," *id.* at 319 (emphasis added) (citing *Hitchcock v. Dugger*, 481 U.S. 393 (1987)); *see also Eddings*, 455 U.S. at 113–14. A sentencer "give[s] effect to" mitigating evidence by weighing all such admissible evidence against any aggravating circumstances proven by the state. *See, e.g.*, *Eddings*, 455 U.S. at 114–15; *Towery v. Ryan*, 673 F.3d 933, 944–45 (9th Cir. 2012). Only by viewing all sentencing evidence in context can a court render the individualized determination of moral culpability that the Constitution requires. *See Lambright v. Schriro*, 490 F.3d 1103, 1115 (9th Cir. 2007) (per curiam).

A court violates the constitutional command by categorically screening out certain mitigating evidence as a matter of law, before it may be weighed in combination with all other relevant sentencing evidence. *Tennard v. Dretke*, 542 U.S. 274, 284–86 (2004); *Eddings*, 455 U.S. at 113–14 (holding that the sentencer may not "refuse to consider, *as a matter of law*, any relevant mitigating evidence") (emphasis in original). Relevance is the only prerequisite to full consideration of mitigating evidence. *See Tennard*, 542 U.S. at 284–85. While the state court may assign a relative weight to each item of admissible mitigating evidence, *Towery*, 673 F.3d at 944, it cannot impose any additional criteria, such as a causal nexus requirement, to screen such evidence from the sentencer's ultimate view of the defendant. A sentencing procedure that automatically assigns a "weight" of zero to any mitigating evidence lacking a causal nexus to the crime is indistinguishable from an analytical "screen" that excludes such evidence from consideration as a matter of law. Thus, regardless of what label it bears, such a "weighing" procedure

plainly violates *Eddings*. Simply altering the label attached to an unconstitutional process does not magically render it constitutional.

At the time it decided this case, the Arizona Supreme Court applied a causal nexus test similar to the one the U.S. Supreme Court held unconstitutional in *Tennard*. *See*, *e.g.*, *State v. Sansing*, 77 P.3d 30, 37 (Ariz. 2003) ("Mere evidence of drug ingestion or intoxication, however, is insufficient to establish statutory mitigation. The defendant must also prove a causal nexus between his drug use and the offense.") (footnote omitted); *State v. Cañez*, 42 P.3d 564, 594 (Ariz. 2002) (en banc) (citation omitted) ("[A] causal nexus between the intoxication and the offense is required to establish non-statutory impairment mitigation"); *State v. Kayer*, 984 P.2d 31, 45 (Ariz. 1999) (en banc) ("A defendant must show a causal link between the alcohol abuse, substance abuse, or mental illness and the crime itself" for such evidence to be considered a mitigating factor); *State v. Clabourne*, 983 P.2d 748, 756 (Ariz. 1999) (en banc) (defendant's difficult childhood not a mitigating factor because "he has failed to link his family background to his murderous conduct or to otherwise show how it affected his behavior"); *State v. Djerf*, 959 P.2d 1274, 1289 (Ariz. 1998) (en banc) (defendant's experience of childhood abuse cannot be considered as a mitigating factor unless there is a causal connection between the abuse and the crime); *State v. Jones*, 937 P.2d 310, 322 (Ariz. 1997) (defendant did not establish impaired capacity as either a statutory or non-statutory mitigating factor because "no testimony establishes, either because of his use of drugs or because he was coming down off of the drugs, that defendant could not appreciate the wrongfulness of his conduct or conform his conduct to the law"); *State v. Wallace*, 773 P.2d 983, 986 (Ariz. 1989) (en

banc) ("A difficult family background, in and of itself, is not a mitigating circumstance.").

Arizona's causal nexus test not only violated *Eddings*, but a long line of Supreme Court cases holding that all relevant mitigating evidence must be considered in capital sentencing. These cases establish that evidence of a defendant's background and character, including childhood trauma or mental health problems, is relevant in mitigation even if it does nothing to explain why the defendant committed the crime of conviction. *See Penry I*, 492 U.S. at 322–23; *Lockett*, 438 U.S. at 604. *See also Lambright*, 490 F.3d at 1115. Such evidence may reasonably diminish the defendant's moral culpability, *see Penry I*, 492 U.S. at 322–23, and "might cause a sentencer to determine that a life sentence, rather than death at the hands of the state, is the appropriate punishment for the particular defendant," *Lambright*, 490 F.3d at 1115. Placing such evidence beyond the sentencer's effective reach is "simply unacceptable in any capital proceeding," *id.* (citing *Lockett*, 438 U.S. at 605), because it deprives the sentencer of the complete, multifaceted rendering of the defendant that must be the basis for capital sentencing.

Arizona's unconstitutional causal nexus test remained in force until *Tennard*, and it was in use when the Arizona Supreme Court considered Poyson's appeal.

## II

In reviewing pre-*Tennard* Arizona capital cases, we do not presume that the Arizona Supreme Court unconstitutionally refused to consider relevant mitigating evidence in its re-weighing of aggravating and mitigating

factors.[1]  Rather, we examine the record to determine whether the Arizona Supreme Court applied an unconstitutional causal nexus test to screen mitigating evidence from consideration in a particular case.  In *Schad v. Ryan*, we affirmed the denial of habeas relief when the record contained "no indication that the state courts applied a nexus test, either as a method of assessing the weight of the mitigating evidence, or as an unconstitutional screening mechanism . . . ."  671 F.3d 708, 724 (9th Cir. 2009) (per curiam).  In doing so, *Schad* was consistent with the Supreme Court's instruction that "[f]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (per curiam) (citations omitted).

Similarly, in *Towery*, we rejected the defendant's claim that the Arizona Supreme Court unconstitutionally screened mitigating evidence that lacked a causal nexus to the crime.  673 F.3d at 944.  We stressed that the state supreme court had articulated the proper standard for considering mitigating evidence.  *See id.*  In independently reviewing Towery's mitigating evidence, the state court recognized that, "[h]aving considered family background during the penalty phase, the sentencer must give the evidence such weight that the sentence reflects a 'reasoned moral response' to the

---

[1] Contrary to the majority's suggestion, Poyson does not ask us to *presume* that, because the Arizona courts frequently applied an unconstitutional causal nexus test at the time of his sentencing, the state court did so in his case.  Rather, the Arizona courts' routine—if not perfectly consistent—practice of unconstitutional capital sentencing before *Tennard* provides probative evidence that the state court in Poyson's case committed the same error.  To consider that evidence, which is plainly material to Poyson's claim, is not to apply an impermissible presumption that the state court erred here.

evidence." *Id.* (alteration in original) (quoting *State v. Towery* (*Towery I*), 920 P.2d 290, 311 (Ariz. 1996)). In light of the whole record, this statement demonstrated the Arizona Supreme Court's awareness that it must weigh *all* relevant mitigating evidence against the aggravating circumstances, even if it ultimately assigned relatively little weight to that mitigating evidence which lacked a strong causal link to the crime. *See id.* at 944–45.

In contrast, in *Styers v. Schriro*, 547 F.3d 1026 (9th Cir. 2008), we looked beyond the Arizona Supreme Court's characterization of its own reasoning where the form of its analysis evidenced unconstitutional screening. *See id.* at 1035 ("In conducting its independent review of the propriety of Styers' death sentence, the Arizona Supreme Court stated that it had 'considered all of the proffered mitigation'. . . However, its analysis prior to this statement indicates otherwise.") (internal citation omitted). Though the state court claimed that it "considered" all mitigating evidence, its analysis showed that it impermissibly screened Styers' mitigating mental health evidence solely because it lacked a causal nexus to the crime. Declining to elevate form over substance, we granted the writ upon concluding that "the Arizona Supreme court *appears* to have imposed a test directly contrary to the constitutional requirement that all relevant mitigating evidence be considered by the sentencing body." *Id.* (emphasis added) (citing *Smith v. Texas*, 543 U.S. 37, 45 (2004)).

Recently, in *Lopez v. Ryan*, 630 F.3d 1198 (9th Cir. 2011), we declined to presume from Arizona case law alone that "a tacit causation rule underpinned the state court's decision" in the case at hand. *Id*. at 1203. Rather than "infer[ring] unconstitutional reasoning from judicial silence,"

*Lopez* instructs that we should "look to what the record actually says." *Id.* at 1204   (citing *Schad*, 606 F.3d at 1046–47).

The import of all these cases is that we should not presume any constitutional error from a silent record, nor should we accept without further examination a state court's characterizations of its own reasoning.  Rather, we should look to the substance of the record itself to determine whether the state court unconstitutionally excluded relevant mitigating evidence from consideration at sentencing.

Though it insists otherwise, the majority treats the statement in *Schad* that relief should be denied "[a]bsent a clear indication in the record that the state court applied the wrong standard" to create a new, more stringent test for determining whether a state court applied an unconstitutional causal nexus analysis.  671 F.3d at 724.  The majority then applies this "test" to resolve purported ambiguities in the record in the state's favor.

However, in stating that we should identify "a clear indication in the record" that the state court violated *Tennard* before granting habeas relief, the *Schad* panel was merely explaining *Bell*'s rule against presuming error from a silent record.  No Supreme Court case imposes a "clear indication" test, nor does any case impose a rule that we must resolve ambiguities against the petitioner.  To the contrary, as Justice O'Connor wrote in her *Eddings* concurrence, the qualitatively different nature of a death sentence requires reviewing courts "to remove any legitimate basis for finding ambiguity concerning the factors actually considered by the trial court." 455 U.S. at 119 (O'Connor, J., concurring).  In short, if there is any legitimate reason to believe that a court has excluded

mitigating evidence from consideration, we should grant habeas relief so that a proper weighing of aggravating and mitigating factors can occur. The appropriate approach, taken in our more recent cases, is simply to evaluate "what the record actually says." *Lopez*, 630 F.3d at 1204 (citing *Schad*, 606 F.3d at 1046–47).[2]

Moreover, because the *Schad* panel found "*no* indication that the state courts applied a nexus test, either as a method of assessing the weight of the mitigating evidence, or as an unconstitutional screening mechanism . . . ," 671 F.3d at 724 (emphasis added), the case simply does not address what a "clear indication" of unconstitutional causal nexus screening looks like, nor the relationship between the purported "clear indication" requirement and the statutory standards governing habeas review. Thus, even assuming that a "clear indication" of unconstitutional causal nexus screening is in fact an

---

[2] *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam), is not to the contrary. There, the Supreme Court simply rejected our reading of the state court's opinion; it did not instruct us to deny habeas relief whenever the state court fails to provide a "clear indication" of constitutional error. *See id.* at 24. While acknowledging that certain language in the state court's opinion could be read as misstating the *Strickland* standard, the *Woodford* Court faulted us for rejecting other, stronger evidence in the opinion indicating that the state court applied the correct standard. *See id.* If anything, *Woodford* supports a close reading of state court decisions on habeas review to determine whether they contravene or unreasonably apply federal law. *See id.* at 23–24. As *Woodford* itself demonstrates, this approach does not offend "the presumption that state courts know and follow the law." *Id.* at 24 (citations omitted). Moreover, to the extent the majority finds the Arizona Supreme Court's opinion in this case ambiguous on the causal nexus issue, *Woodford* is of little help, as it simply does not address the analysis of an ambiguous state court decision on habeas review. *See id.* at 23 (asserting that the state court opinion at issue "painstakingly describes the [correct] *Strickland* standard").

independent prerequisite to granting habeas relief, *Schad* entirely fails to support the majority's proposition that a "clear indication" can exist only in the absence of any ambiguity in the state court's analysis. The notion that a habeas petitioner can secure relief only by conclusively establishing the absence of *any* ambiguity in the state court record is patently inconsistent with the preponderance standard that defines the petitioner's burden.[3] Assuming that we and the district court faithfully apply the statutory standard for granting a certificate of appealability, we should

---

[3] The majority insists that, under its reasoning, Poyson need not prove the absence of any meaningful ambiguity in the state court record to secure relief. Rather, the majority asserts that Poyson's claim must fail because the record in this case "is *insolubly* ambiguous." Maj. Op. 30. Thus, we now have new categories of ambiguity: ambiguous, *meaningfully* ambiguous, and *insoluably* ambiguous. Not only are these labels distinctions without difference, these new tests are not to be found in any Supreme Court jurisprudence, which governs our considerations of AEDPA cases, nor our own. The majority does not cite a single case in which we have rejected a prisoner's habeas claim because we simply could not figure out what the state court had said. Instead, it relies on decisions denying relief because the record—ambiguous as it might have been—ultimately showed that the state court employed a causal nexus test as a permissible weighing mechanism or did not rely on causal nexus analysis at all. Maj. Op. 26–27 (citing *Towery*, 673 F.3d at 945; *Schad*, 671 F.3d at 724; *Lopez*, 630 F.3d at 1203–04). To the extent the majority suggests that the state court decision at issue in this case is unprecedented in the extent of its ambiguity, that proposition is belied by the state court decision in *Styers*, which, as explained below, employed strikingly similar language yet was sufficiently comprehensible to support habeas relief. Of course, Poyson bears the burden of proof, but there is no authority for the proposition that we may throw up our hands and declare the record too ambiguous to definitively interpret one way or the other. The majority fails to recognize that the preponderance standard, by definition, permits the party bearing the burden to proof to prevail without establishing his position beyond reasonable doubt. The effect of the majority rule is to alter the burden of proof, and it flatly contracts our analysis in *Styers*.

only have the opportunity to review claims as to which the record is somewhat ambiguous. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1081 (9th Cir. 2000) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (to obtain a certificate of appealability, a habeas petitioner must demonstrate "'that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner . . . .'"). To secure relief, the petitioner need not show that there is no conceivable ambiguity in the record that could support the state's position; rather, he must persuade us that his evidence that the state court's decision was contrary to clearly established federal law is stronger than the state's.

## III

I disagree with the majority's conclusion that the state court's decision is simply too ambiguous to permit meaningful habeas review. Rather, when we examine "what the record actually says," *Lopez*, 630 F.3d at 1204 (citation omitted), the Arizona Supreme Court's use of an unconstitutional causal nexus test to screen Poyson's mitigating evidence of mental health problems and childhood abuse is readily apparent.[4]

The Arizona Supreme Court's analysis in this case is substantially indistinguishable from its decision in *Styers*, in which we found sufficient evidence of a constitutional violation to grant habeas relief. In *Styers*, the Arizona Supreme Court listed each item of proffered mitigation

---

[4] I agree with the majority that the Arizona Supreme Court did not violate *Eddings* in rejecting Poyson's evidence of substance abuse as a mitigating factor, as it found that he failed to establish a significant history of substance abuse as a matter of fact.

evidence: First, it noted that "Defendant had no prior convictions for either misdemeanors or felony offense[s]" and stated that "[t]his is relevant mitigating evidence." *State v. Styers*, 865 P.2d at 777 (citation omitted). Next, it stated that "Defendant's service in Vietnam and honorable discharge are also relevant mitigating circumstances." *Id.* (citation omitted). Then, the court noted that "Defendant also suffered from post-traumatic stress disorder prior to and around the time of the murder as a result of his combat service in Vietnam." *Id.* The court said that "[t]his could also, in an appropriate circumstance, constitute mitigation. However, two doctors who examined defendant could not connect defendant's condition to his behavior at the time of the conspiracy and murder." *Id.* (internal citation omitted). The state court did not recite a comprehensive list of the mitigating factors it considered in its independent review of Styers' death sentence; thus, it did not clarify whether Styers' post-traumatic stress disorder would in fact "constitute mitigation." Instead, the court asserted that "[w]e have considered all of the proffered mitigation and, like the trial court, find it is not sufficiently substantial to warrant leniency." *Id.* at 777.

On habeas review, we relied on this analysis to find that the state court violated Styers' right to an individualized capital sentencing under *Eddings* and *Smith*, notwithstanding its claim to have considered all of Styers' proffered mitigating evidence. *Styers*, 547 F.3d at 1035. Though the state court acknowledged that evidence of post-traumatic stress disorder is, as a general matter, relevant in mitigation, we found that its "use of the conjunctive adverb 'however,' following its acknowledgment that such evidence 'could' in certain cases constitute mitigation, indicates that this was not such a case." *Id.* In the context of its entire analysis, this turn

of phrase revealed that the state court had applied a causal
nexus test "directly contrary to the constitutional requirement
that all relevant mitigating evidence be considered by the
sentencing body." *Id.* We reaffirmed this interpretation in
*Schad*, describing *Styers* as a case in which the state court
"*expressly* disregarded" mitigating psychiatric evidence due
to the defendant's "failure to demonstrate a causal connection
between the disorder and the crime." *Schad*, 671 F.3d 708,
724 (9th Cir. 2009) (emphasis added).

Upon close examination, the state court's analysis in
Poyson's case is strikingly similar to that in *Styers*. With
respect to Poyson's mental health evidence, the Arizona
Supreme Court acknowledged that Poyson "suffers from
'certain personality disorders'" and did not question that
evidence of such disorders is relevant in mitigation. *State v.
Poyson*, 7 P.3d at 90. It then stated, echoing its reasoning in
*Styers*: "[h]owever, we find no indication in the record that
'the disorder controlled [his] conduct or impaired his mental
capacity to such a degree that leniency is required.'" *Id.* at
90–91 (quoting *State v. Brewer*, 826 P.2d 783, 802 (Ariz.
1992)). It therefore accorded Poyson's evidence of mental
health problems "no mitigating weight." *Id.* at 91. Similarly,
the state court acknowledged that Poyson was physically,
mentally, and sexually abused as a child. *Id.* It then stated:
"however, defendant did not show that his traumatic
childhood somehow rendered him unable to control his
conduct. Thus, the evidence is without mitigating value."
*Id.*[5]

---

[5] Though we review the Arizona Supreme Court's opinion in this case,
the sentencing court's analysis is relevant to the extent that the state
supreme court generally adopted its reasoning. Without a doubt, the
sentencing court's discussion of Poyson's proffered mitigating evidence

If anything, the state court provided more evidence of unconstitutional causal nexus screening in Poyson's case than it did in Styers'. For at the end of its opinion, the state court listed all of the mitigating circumstances it considered in its independent review of Poyson's death sentence. *Id.* It omitted from this critical tally both Poyson's personality disorders and his abusive childhood. *See id.* (listing only "cooperation with law enforcement, age, potential for rehabilitation, and family support" as mitigating evidence in the case); *see also* Maj. Op. 21–22 (acknowledging that the state court found—and weighed—only one statutory mitigating factor (age) and three nonstatutory mitigating factors (cooperation with law enforcement, potential for rehabilitation, and family support)).

*Bell* forbids our *presuming* constitutional error based on a silent record. However, like the panel that granted the writ in *Styers*, we are not bound to accept a state court's characterization of its own analysis when its reasoning reveals a deprivation of constitutional rights in violation of clearly established law. This is particularly true when the

---

lends greater force to his *Penry* claim. For example, the sentencing court accepted that Poyson suffers from personality disorders, yet the sentencing judge concluded that this evidence did not "rise to the level of being a mitigating factor *because I am unable to draw any connection whatsoever with such personality disorders and the commission of these offenses.*" (emphasis added). To the extent that the court excluded the evidence on the ground that Poyson's mental health problems were not sufficiently severe, it erred. Evidence of mental health problems is relevant in mitigation, and a defendant need not show that such problems rise to a specified level of severity to establish their relevance. *See Tennard*, 542 U.S. at 284–85. The sentencing court improperly rejected Poyson's personality disorders as mitigating evidence because of the lack of causal connection between those disorders and the murders at issue.

result of the state court's error is to deprive a human being of his life.

The Eighth and Fourteenth Amendments prohibit state courts from screening mitigating evidence from full consideration based on a lack of causal nexus to the crime of conviction.  In reviewing Poyson's sentence, however, the Arizona Supreme Court applied a formula that automatically assigned a "weight" or "value" of zero to all mitigating evidence that lacked a causal nexus to the crime.  Most significantly, this total devaluation of  Poyson's mitigating evidence occurred logically prior to the state court's balancing of aggravating and mitigating circumstances. *See State v. Poyson*, 7 P.3d at 90–91.  As such, the Arizona Supreme Court failed to "consider all relevant mitigating evidence *and weigh it against the evidence of the aggravating circumstances*," *Eddings*, 455 U.S. at 117 (emphasis added), which prevented Poyson from presenting the totality of his individualized circumstances to the court exercising authority to condemn him to death.  The "consideration" of Poyson's mitigating evidence was without meaning where the court discarded that evidence before the critical stage of its analysis—the final balancing of mitigating and aggravating circumstances that determined his sentence.  To label the process "weighing" does not make it so; screening by any other name is still screening.

The Arizona Supreme Court did not consider mitigating evidence offered by Poyson because it lacked a causal nexus to the crime.  In doing so, it committed *Eddings* error.  Remand is required.

I respectfully dissent, in part.