T. S. ALPHIN and Alphin Aircraft,
Inc., Appellants,

v.

Richard HENSON et al., Appellees.

No. 75–1635.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 24, 1976.

Decided Feb. 22, 1977.

As Amended on Denial of Rehearing and
Rehearing In Banc April 5, 1977.

Carl W. Schwarz, Washington, D. C. (Metzger, Noble, Schwarz & Kempler, Robert M. Beckman, Frank Kingston Smith, Beckman & Smith, Washington, D. C., on brief), for appellants.

George J. Goldsborough, Jr., Washington, D. C. (Broughton M. Earnest, Easton, Md., on brief), for appellees Richard Henson and Henson Aviation, Inc.

Robert E. Kuczynski, Daniel W. Moylan and William P. Nairn, Hagerstown, Md., on brief, for appellee The City of Hagerstown.

Before WINTER, Circuit Judge, FIELD, Senior Circuit Judge, and MERHIGE,* District Judge.

PER CURIAM.

In a previous appeal we affirmed the district court's ruling that defendants, Richard Henson and Henson Aviation, Inc., had attempted to monopolize the business they conducted at the Hagerstown (Maryland) Regional Airport in violation of § 2 of the Sherman Act and that plaintiffs were entitled to injunctive relief. Because plaintiffs could not prove damages as a result of these defendants' attempt to monopolize, we affirmed the district court's ruling that on the authority of *Byram Concretanks, Inc. v. Warren Concrete Prod. Co. of N. J.*, 374 F.2d 649, 651 (3 Cir. 1967), plaintiffs could not recover attorneys' fees from these defendants pursuant to § 4 of the Act. Our opinion is reported in 538 F.2d 85 (4 Cir. 1976).

By order entered June 25, 1976, we stayed the issuance of our mandate to permit plaintiffs to apply for a writ of certiorari from the Supreme Court. The petition was filed in the Supreme Court on August 16, 1976. It was eventually denied on November 15, 1976. Notice of denial was received by us on November 22, 1976. In the interim, plaintiffs, on November 17, 1976, filed a motion for leave to file a second petition for rehearing. We entered a further stay of our mandate on November 19, 1976 until the matter could be decided, and directed Henson and Henson Aviation, Inc. to file an answer thereto. The answer was filed on November 24, 1976, and the matter is ripe for decision.

Plaintiffs' latest motion calls attention to the enactment of Public Law 94–435, known as the "Hart-Scott-Rodino Antitrust Improvements Act of 1976," which, *inter alia*, added to the language of 15 U.S.C. § 26 the following:

> In any action under this section in which the plaintiff substantially prevails, the court shall award the costs of suit, including a reasonable attorney's fee, to such plaintiff.

The Act was signed by the President on September 30, 1976, and the quoted language became effective on that date.

The significance of the amendment to the plaintiffs is at once apparent when it is recognized that the injunction against these defendants was entered pursuant to the authority vested in the district court by 15 U.S.C. § 26.[1] Thus, had the 1976 amendment been in effect at the time of decision by the district court, plaintiffs clearly would have been entitled to an award of attorneys' fees supplementing the injunctive relief which they were granted.

It is an established principle "that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).[2] In the instant case, we do not think that an award of attorneys' fees would result in manifest injustice. Plaintiffs, small aircraft maintenance and repair operators, have successfully vindicated the public interest and public policy expressed in the antitrust laws by

---

* Honorable Robert R. Merhige, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

1. While the antitrust violation which defendants committed was an attempt to monopolize proscribed by § 2 of the Sherman Act, 15 U.S.C. § 2, § 16 of the Clayton Act, 15 U.S.C. § 26, is the statute empowering a court of the United States to grant injunctive relief against threatened loss or damage by a violation of the "antitrust laws." "Antitrust laws" is defined by § 1 of the Clayton Act, 15 U.S.C. § 12, to include the Sherman Act.

2. It is of special interest that *Bradley* was a case involving an award of attorneys' fees pursuant to a statute enacted after the attorneys' services were rendered and after the case was submitted, but not yet decided, on appeal. The statute was held applicable and counsel fees ordered to be awarded.

bringing would-be monopolists to heel. Although it has been found that plaintiffs suffered injury as a result of defendants' illegal activities, plaintiffs have been denied any recovery for damages. Retrospective application of the 1976 Act would not, in our view, infringe any right of defendants which had matured or become unconditional; nor have defendants been denied the opportunity to be heard. Indeed, the subject of plaintiffs' claim to attorneys' fees has been the subject of litigation throughout. *See Bradley v. Richmond School Board*, 416 U.S. at 717–21, 94 S.Ct. 2006. Finally, the 1976 Act, so far as pertinent, contains no limitation prohibiting its application to the present suit. The legislative history of the 1976 Act indicates that it was intended to apply.[3]

■ Our control over a judgment of our court continues until our mandate has issued, *Gradsky v. United States*, 376 F.2d 993 (5 Cir. 1967); *Meredith v. Fair*, 306 F.2d 374 (5 Cir. 1962), unless, of course, our control has been ousted by proceedings in the Supreme Court. Indeed, in exceptional cases, we may even recall our mandate to avoid injustice. *Perkins v. Standard Oil Co. of California*, 487 F.2d 672 (9 Cir. 1973); *Powers v. Bethlehem Steel Corp.*, 483 F.2d 963 (1 Cir. 1973).

■ In the instant case, our mandate has not issued as a result of successive stays. We disagree with defendants that Rule 41(b), F.R.A.P., required that our mandate issue on November 15, 1976, the date that the Supreme Court denied certiorari. Read in the full context of Rule 41(b),[4] we think that the "filing of a copy of an order of the Supreme Court, etc." refers to the filing in our court and not the original filing in the Supreme Court.[5] While the filing in our court occurred on November 22, 1976, we had already stayed issuance of our mandate by order filed November 19, 1976.

Thus, we conclude that our decision is not final and that we should amend what we previously decided to make it conform to the law which now exists.[6] Although it has been found that plaintiffs were among those adversely affected by defendants' illegal attempt to monopolize, plaintiffs have been denied any recovery for damages. Instead, we reverse that portion of the dis-

---

**3.** During the Senate debates, Senator Abourezk asked Senator Hart (the moving force behind the legislation):

Does this mean that following the usual rule, as in such cases as *Bradley v. School Board of the City of Richmond*, 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974), actions brought prior to the date of enactment of this provision, yet decided after the date of enactment, will still be eligible for such attorneys' fees awards?

MR. PHILIP A. HART. The answer is "yes," under that case and a number of other comparable cases.

Cong.Rec. S. 8960 (daily ed. June 10, 1976) (94th Cong., 2d Sess.)

**4.** With emphasis supplied to the sentence relied on by plaintiffs, Rule 41(b) reads:

(b) *Stay of Mandate Pending Application for Certiorari*. A stay of the mandate pending application to the Supreme Court for a writ of certiorari may be granted upon motion, reasonable notice of which shall be given to all parties. The stay shall not exceed 30 days unless the period is extended for cause shown. If during the period of the stay there is filed with the clerk of the court of appeals a notice from the clerk of the Supreme Court that the party who has obtained the stay has filed a petition for the writ in

that court, the stay shall continue until final disposition by the Supreme Court. *Upon the filing of a copy of an order of the Supreme Court denying the petition for writ of certiorari the mandate shall issue immediately.* A bond or other security may be required as a condition to the grant or continuance of a stay of the mandate.

**5.** Rule 1, F.R.A.P., states that the rules govern procedures in the United States Courts of Appeals. Since the Supreme Court does not issue a mandate when certiorari is denied, the issuance of the mandate is by a Court of Appeals. This indicates that the filing is with the court issuing the mandate. Additionally, the filing in the Supreme Court would not be of a "copy"; it would be the original order denying certiorari.

**6.** Defendants contend that plaintiffs sought to bring the 1976 Act to the attention of the Supreme Court and that since the Supreme Court denied certiorari, it necessarily rejected the argument that the 1976 Act was applicable. We are not persuaded. The law is clear that the denial of certiorari decides nothing except that the writ will not be granted for reasons which are undisclosed.

trict court's judgment and remand the case with directions to grant appropriate attorneys' fees in accordance with the 1976 Act. So that the case is not unduly fragmented, the district court shall make an allowance for attorneys' fees for services in this court and in the Supreme Court, as well as for services in the district court. Plaintiffs shall recover costs since they have ultimately prevailed on appellate review.

*AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.*

FIELD, Senior Circuit Judge, dissenting:

As noted by the majority, in *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Court stated "that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." On May 17, 1976, we did just that when we filed our opinion in this case denying an award of attorneys' fees.[1] Thereafter we stayed our mandate to permit the plaintiffs to apply for a writ of certiorari, and on September 30, 1976, and while the petition for certiorari was pending, Public Law 94–435, amending 15 U.S.C. § 26, became effective. Certiorari was denied by the Supreme Court on November 15, 1976.

The majority, drawing primarily on *Bradley*, concludes that since our mandate had not issued[2] our decision in this case is not final and that we should therefore give the plaintiffs the benefit of the Amendment. In my opinion the rationale of *Bradley* is inapplicable to this case. In *Bradley* the statute had become effective while the case was pending in this court and had not yet been decided. In the present case, however, the case had been decided by us and had become a finality in this court over four months prior to the effective date of the

Amendment. While I agree, of course, that the denial of certiorari has little or no decisional or precedential effect, nevertheless, it occurs to me that the Supreme Court would have been as perceptive as we in discerning any effect of the Amendment on this case. In my opinion the majority has intruded upon the legislative area in giving the Amendment retroactive effect.

---

1. *Alphin v. Henson*, 538 F.2d 85 (4 Cir. 1976).

2. Rule 41(b), Fed.R.App.P., provides, *inter alia*, that "[u]pon the filing of a copy of an order of the Supreme Court denying the petition for writ of certiorari the mandate shall issue immediately." Since our mandate was initially

stayed for the limited purpose of permitting the plaintiffs to file their petition for certiorari, I entertain serious doubts that our action in ordering a further stay after certiorari had been denied was consonant with Rule 41(b).