36 F.3d 1091
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James R. BUTLER, Plaintiff-Appellant,
v.
ACADEMY INSURANCE GROUP, INC.; Academy Life Insurance Co.;
Pension Insurance Group of America, Inc.; Pension
Life Insurance Company of America,
Defendants-Appellees.
James R. BUTLER, Plaintiff-Appellee,
v.
ACADEMY INSURANCE GROUP, INC.; Academy Life Insurance Co.;
Pension Insurance Group of America, Inc.; Pension
Life Insurance Company of America,
Defendants-Appellants.
 Nos. 92-1916, 92-1955.
 United States Court of Appeals, Fourth Circuit.
 Argued June 11, 1993.
Decided September 8, 1994.
 
 Argued: Thomas C. Salane, Turner, Padger, Graham & Lane, P.A., Columbia, SC. On brief: C. Ansel Gantt, Jr., Allen & Gantt, Columbia, SC, for Appellant.
 Argued: James Wright Crabtree, Smathers & Thompson, Charlotte, NC. On brief: Charles E. Baker, Baker, Barwick, Ravenel & Bender, Columbia, SC, for Appellees.
 Before RUSSELL, Circuit Judge, and BUTZNER and PHILLIPS, Senior Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant James R. Butler ("Butler") appeals the district court's judgment, seeking incorporation of the court's alternate findings of fact into the judgment. For the reasons stated herein, we grant Butler's request and affirm the district court's judgment as modified.
 
 I.
 
 2
 The facts of this complex dispute between Butler, a former insurance agent, and his employers are presented fully in the opinion of the district court, Butler v. Academy Ins. Group, Inc., No.3:86-2404-16 (D.S.C. May 1, 1992). We summarize them here.
 
 
 3
 Butler, a former major in the United States Army, took a position with Academy Insurance Group ("Academy") as an insurance salesman. Academy markets insurance policies primarily to military personnel and their dependents. During his tenure with Academy, Butler rose through the ranks and eventually became the "Managing General Agent" ("MGA") for Academy's operation in Europe in January 1982. Butler held this position until April 1, 1986, when he resigned and was replaced by Monte Dennett ("Dennett").
 
 
 4
 As MGA, Butler was authorized to advance Academy monies to agents who worked in his territory and to recoup these funds from commissions later earned by the agents. Pursuant to his contract with Academy, Butler was personally liable for those advances that he did not recover.
 
 
 5
 When Butler left the European MGA position, questions arose concerning the extent of Butler's liability for advances he had authorized and whether certain commissions earned by the European agents would be applied towards those past advances. That controversy resulted in the instant lawsuit, with Butler suing for unpaid commissions due him, and Academy counterclaiming for advances made by Butler that allegedly had not been repaid.
 
 
 6
 Butler's case was originally tried before the Honorable Karen L. Henderson without a jury and resulted in a judgment for Academy on its counterclaim in the amount of $566,922.73. At the end of the trial, Judge Henderson posed certain written questions to both sides in an attempt to resolve the issue of damages. On initial appeal to this court, Butler contended, among other things, that this procedure deprived him of his right to challenge Academy's responses. We agreed and accordingly remanded the case to the district court with instructions that it allow Butler to introduce evidence and cross-examine witnesses concerning the amount Academy was entitled to recover on its counterclaim. Butler v. Academy Ins. Group, Inc., No.88-2600 (4th Cir. Oct. 25, 1990) (unpublished disposition).
 
 
 7
 During the pendency of the first appeal, Judge Henderson was elevated to the United States Court of Appeals for the District of Columbia Circuit. Butler's case was transferred to the Honorable Joseph F. Anderson, Jr. and a bench trial on damages was held in January 1992. Judge Anderson, after considering the cross-examination of Academy's "damages" witness, determined that the accounting methodology used by Academy was flawed in several respects. Judge Anderson thus ordered a full accounting of commissions earned and credited.
 
 
 8
 Upon submission of the complete accounting, Judge Anderson held that Butler was entitled to additional credits of principal and interest for recruiting commissions earned on policies issued before April 1, 1986, which were not considered in prior accountings, and for agent debts exonerated by Dennett and Academy. In addition, Judge Anderson found other commission credits due Butler which he determined were not within the literal remand instructions of this court.[1] These additional commission credits were made the subject of alternative findings of fact B.1A and B.3A in his order but were not included within the amount of the resulting judgment. Based upon the accounting corrections, the district court entered a judgment in favor of Butler in the amount of $39,016.40.[2]
 
 
 9
 Butler now appeals to this court, contending that we should recall the mandate we issued in Butler v. Academy Ins. Group, Inc., No.88-2600 (4th Cir. Oct. 25, 1990) and reform it to permit the inclusion of the district court's alternate findings of fact within the judgment. Academy objects to the suggested recall and reformation of our mandate, which would impose on it additional liability of $383,389.46, and cross-appeals the district court's conclusion that certain of its practices exonerated $672,515.59 (including interest) of Butler's debt.[3]
 
 II.
 
 10
 The power of a court of appeals to recall its mandate in appropriate instances is well-established. E.g., Patterson v. Crabb, 904 F.2d 1179, 1180 (7th Cir.1990); Zipfel v. Halliburton Co., 861 F.2d 566, 565 (9th Cir.1988); Dunton v. County of Suffolk, 748 F.2d 69, 70 (2d Cir.1984); Dilley v. Alexander, 627 F.2d 407, 410 (D.C.Cir.1980); Nat'l Sur. Corp. v. Charles Carter & Co., 621 F.2d 739, 741 (5th Cir.1980); American Iron and Steel Institute v. EPA, 560 F.2d 589, 592-93 (3d Cir.1977); Alphin v. Henson, 552 F.2d 1033, 1035 (4th Cir.1977) (recognizing that "in exceptional cases, we may even recall our mandate to avoid injustice"), cert. denied, 434 U.S. 823 (1977); 16 Charles A. Wright et al., Federal Practice and Procedure Sec. 3938 (ed.1977). But see Boston and Maine Corp. v. Town of Hampton, 7 F.3d 281, 282-83 (1st Cir.1993) (discussing troubling aspects of the power to recall a mandate). The source of this power has not been conclusively identified. Most courts of appeals, however, have rooted the authority to recall a mandate in the "inherent power" of a court, American Iron and Steel, 560 F.2d at 593, and have held that it may be exercised for good cause or to prevent injustice, Zipfel, 861 F.2d at 567. The courts of appeals caution, however, that this power is an extraordinary remedy that may be used only in unusual circumstances. E.g., Greater Boston Television Corp. v. FCC, 463 F.2d 268, 277 (D.C.Cir.1971), cert. denied, 406 U.S. 950 (1972).
 
 
 11
 We find that the case at bar warrants the use of our discretionary power to recall and reform our mandate to permit inclusion of alternate finding B.3A in the district court's judgment. In this alternate finding, the district court found that Butler had not received credit for recruiting commissions earned on policies written after April 1, 1986 because Dennett had changed the agent account numbers[4] when he took over as MGA in Europe. This change resulted in the payment of $175,544 in recruiting commissions to Dennett rather than Butler. It was represented by Academy in both the initial trial and appeal, however, that Butler had received full credit for these commissions. Judge Henderson's refusal to permit cross-examination concerning the issue of damages prevented discovery of the improperly credited recruiting commissions until remand and cross-examination of Academy's damages witness. Given these unusual circumstances, we find that recalling and reforming our mandate is required to prevent the gross injustice that would otherwise result if we allowed Academy to escape the extensive liability discovered by the district court on remand.
 
 
 12
 Turning to alternate finding B.1A, we decline to exercise our authority to recall and reform our mandate to permit the inclusion of this finding in the district court's judgment. In this alternate finding, the district court concluded that Academy's direct collection efforts with respect to the accounts of seven agents, which were settled via a promissory note signed by Butler, prejudiced Butler's right to proceed against those agents, causing him a loss of $154,510.09. Butler, who filed for bankruptcy during the pendency of the prior appeal, seeks incorporation of this finding primarily to avoid unnecessary relitigation of this issue before the bankruptcy court.
 
 
 13
 Our power to recall and reform a mandate is an extraordinary remedy that must be used sparingly so as not to undermine the finality of judgments. We see no reason to exercise this power here. The parties to the initial litigation filed no claims or counterclaims concerning the note; Butler's claims, therefore, can be adjudicated separately with no prejudice to either party beyond the cost of relitigation. To exercise our power merely to spare Butler the expense of additional litigation would, in our view, be an abuse of that power.
 
 III.
 
 14
 For the foregoing reasons, we recall the mandate we issued in Butler v. Academy Ins. Group, Inc., No.88-2600 (4th Cir. Oct. 25, 1990), and reform it to permit the inclusion of the district court's alternate finding of fact B.3A within its judgment. This case is accordingly remanded to the district court to modify its judgment to incorporate alternate finding of fact B.3A and its attendant legal conclusions, resulting in a $228,879.37 credit to Butler.[5]
 
 
 15
 AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS
 
 
 
 [1]
 In remanding this case to the district court, this court instructed that
 [t]he district judge should allow Butler to introduce evidence and cross-examine witnesses on the question whether he has received proper credit for commissions earned on policies issued prior to April 1, 1986, and, if not, the amount of those commissions. The district judge should also make findings and decide whether the company exonerated agents who owed advances while at the same time charging Butler with the exonerated advances....
 Butler v. Academy Ins. Group, Inc., No.88-2600, slip op. at 14 (4th Cir. Oct. 25, 1990). The highlighted date restriction led Judge Anderson to conclude that he could not adjudicate Butler's entitlement to post-April 1986 commissions arising from his recruitment of the policy-writing agents. On the chance that this court did not agree with his literal interpretation of the remand instructions, however, Judge Anderson found, in alternate finding B.3A, that Academy owed Butler $228,879.37 in commissions from policies written after April 1986, because Butler recruited the agents who wrote the policies and was contractually entitled to a recruiting commission.
 Alternate finding B.1A concerns a promissory note Butler signed in settlement of thirty-three of his agent accounts. Because the note did not become due until after the case was remanded, no claims or counterclaims on it were made by the parties to the initial litigation. Judge Anderson concluded that the note was, for that reason, beyond the scope of the remand and declined to enter judgment on his alternate finding that Academy's direct collection efforts with respect to some of the agents whose accounts were settled via the note prejudiced Butler's right to proceed against those agents.
 
 
 [2]
 Butler moved the district court to amend its order. Judge Anderson granted in part and denied in part this motion. Because the amendments Judge Anderson made related to the alternate findings only, they did not affect the amount of the final judgment
 
 
 [3]
 We have reviewed Academy's contentions in its cross-appeal and find them to be without merit
 
 
 [4]
 According to company practice, Academy pays all compensation due an agent into an individual escrow account from which the agent then receives the compensation in periodic increments
 
 
 [5]
 In our remand order, we directed the district court to "either reduce the counterclaim or re-enter judgment for the sum it previously found." Academy thus contends that the district court has no authority under our mandate to enter judgment in favor of Butler. We agree. We note, however, that when we remanded the case to the district court to allow Butler to challenge the award of damages on Academy's counterclaim, we failed to envision a situation where Academy would end up owing Butler money. We see no reason to punish Butler for the cumulative effect of the district court's error and this court's lack of sufficient imagination by imposing this barrier to his recovery. We accordingly relax this portion of our mandate to allow the district court to enter judgment in favor of Butler