*1060 Judge W. FLETCHER,
concurring:
On June 19, 2013, a three judge panel of our court unanimously denied habeas relief in this capital case. Henry v. Ryan, 720 F.3d 1073 (9th Cir.2013). Among other things, Henry claimed that the Arizona courts had committed an error under Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The panel assumed without deciding that the Arizona courts had committed an Eddings error. 720 F.3d at 1091. It nonetheless denied relief on the ground that any error was harmless under the standard of Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The panel did not apply a structural error standard. Id. at 1089. On November 1, the panel denied Henry’s petition for rehearing. No member of our court called the case en banc.
On March 12, 2014, our court granted en banc review of McKinney v. Ryan, 730 F.3d 903 (9th Cir.2013). A central question before the en banc court in McKinney will be whether Eddings error is structural. On March 14, two days after we granted en banc review in McKinney, Henry moved for full-court reconsideration of the denial of his petition for rehearing en banc in light of McKinney. On March 27, the judge of our court who serves as en banc coordinator entered an order, on behalf of the court, denying the motion as proeedurally improper.
Then, in a motion for reconsideration addressed to the three judge panel, Henry sought a stay of proceedings in light of the grant of en banc rehearing in McKinney and the grant of a stay in Poyson v. Ryan, 743 F.3d 1185 (9th Cir.2014). Poyson is a separate Eddings case in which the three judge panel had denied habeas relief and in which an en banc call had failed. Noting that the panel in Poyson had stayed proceedings to await the outcome in McKinney, Henry wrote in his motion:
Mr. Henry is similarly situated to Mr. Poyson: Mr. Henry and Mr. Poyson both raised a causal-nexus issue in their petitions for rehearing, and their petitions for rehearing were denied within one week of each other. Mr. Poyson’s panel has now amended its order denying panel rehearing and is instead staying the case pending the resolution of McKinney. [If the panel denies Mr. Henry’s motion,] [t]he prejudice to Mr. Henry will be great — he will be executed, while Mr. McKinney or Mr. Poyson may be spared.
Motion at 7. Henry therefore asked the panel to “stay the proceedings pending the resolution of the en banc proceedings in McKinney.” Id. at 8.
On April 8, the panel denied Henry’s motion on the merits. Two of the panel judges joined in a published per curiam order. The third judge, the author of the panel opinion that had denied habeas relief, dissented, contending that the panel should stay proceedings to await McKinney. Two days later, on April 10, a judge of our court called en banc the panel’s order. After an exchange of memoranda arguing for and against the en banc call, in accordance with our usual practice, a majority of the active judges on our court voted to reconsider en banc the panel’s order denying the stay.
Some of our colleagues now dissent from our court’s decision to rehear en banc the panel’s order. They do not dispute that a potentially dispositive issue in McKinney — whether an Eddings error by the state court is structural — is also potentially dispositive in Henry. They nonetheless contend that we should not reconsider en banc the panel’s order. With respect, our dissenting colleagues are mistaken.
Our dissenting colleagues’ first contention may be disposed of fairly quickly. *1061 They contend that our court has acted improperly under our own internal procedures in voting to reconsider en banc the panel’s order. They contend that the call came too late. If the calling judge had called en banc on April 10 the panel’s decision denying habeas relief in Henry’s case, the dissenters would be correct. But the calling judge did not do that. Rather, the calling judge called en banc the panel’s April 8 order denying Henry’s request to stay proceedings to await McKinney.
Federal Rule of Appellate Procedure 35(a)(1) provides that en banc reconsideration is appropriate when “necessary to secure or maintain uniformity of the court’s decisions.” Ninth Circuit Rule 27-10(b) specifically contemplates that orders issued in response to motions may be reheard en banc, as does our General Order 6.11. Our long-standing and consistent practice has been to allow en banc calls of orders, see, e.g., Andreiu v. Ashcroft, 253 F.3d 477 (9th Cir.2001) (en banc) (en banc rehearing of a panel order denying a stay of removal), even when those orders have been entered after the panel’s decision on the merits of a case. See, e.g., Garcia v. Google, Inc., No. 12-57302, Docket Entry No. 46 (9th Cir. Mar. 6, 2014) (order issued by our en banc coordinator notifying the parties that an order of the three judge panel “denying a stay of the panel’s prior orders” had been called en banc, and noting that “[t]he en banc call is confined to the stay order only, and the parties should address only the order in the briefing”).
Our dissenting colleagues’ other contentions deserve more sustained attention.
Our dissenting colleagues contend that because the Supreme Court has denied certiorari, Federal Rule of Appellate Procedure 41(d)(2)(D) requires immediate issuance of the mandate. Dissent at 8-10. The language upon which they rely provides, “The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed.” If taken out of context, this language means what the dissenters want it to mean. But if taken in context, it does not.
In relevant part, Rule 41 provides as follows:
(b) When Issued. The court’s mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. The court may shorten or extend the time.
(d) Staying the Mandate.
(1) On Petition for Rehearing or Motion. The timely filing of a petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion, unless the court orders otherwise.
(2) Pending Petition for Certiorari.
(A) A party may move to stay the mandate pending the filing of a petition for a unit of certiorari in the Supreme Court. The motion must be served on all parties and must show that the certiorari petition would present a substantial question and that there is good cause for a stay.
(B) The stay must not exceed 90 days, unless the period is extended for good cause or unless the party who obtained the stay files a petition for the writ and so notifies the circuit clerk in writing within the period of the stay. In that case, the stay continues until the Supreme Court’s final disposition.
*1062 (D) The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for unit of cer-tiorari is filed.
Fed. R.App. P. 41 (emphasis added).
The Supreme Court has not read Rule 41(d)(2)(D) in the way our dissenting colleagues want to read it. The Court reads it to apply only to stays of mandate entered for the sole purpose of allowing the Supreme Court to consider a petition for certiorari. When a stay of mandate is entered for some other purpose, Rule 41(b) applies.
Our Circuit Rule 22-2(e) provides, “When the panel affirms a denial or reverses a grant of a first petition or motion [in a capital case], it shall enter an order staying the mandate pursuant to FRAP 41(b).” Acting on behalf of the panel, the clerk’s office in this case stayed the mandate pursuant to Rule 41(b), as it routinely does in all capital cases. That stay remains in effect.
In Bell v. Thompson, 545 U.S. 794, 125 S.Ct. 2825, 162 L.Ed.2d 693 (2005), and Ryan v. Schad, — U.S. —, 133 S.Ct. 2548, 186 L.Ed.2d 644 (2013), the Supreme Court held that the mandate should have been issued after a denial of certiorari. But the Court made clear in both Bell and Schad that Rule 41(d)(2)(D) is the “default rule” applicable only to stays entered solely for the purpose of allowing time for the Supreme Court to consider a petition for certiorari. The Court wrote in Bell:
In the typical case, where the stay of mandate is entered solely to allow this Court time to consider a petition for certiorari, Rule 41(d)(2)(D) provides the default: “The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed.”
545 U.S. at 806, 125 S.Ct. 2825 (emphasis added). The Court quoted this language from Bell in Schad. See 133 S.Ct. at 2550. In Schad, the Court explained the reason for Rule 41(d)(2)(D):
Federal Rule of Appellate Procedure 41(d)(2)(D) sets forth the default rule that “[t]he court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed.” (Emphasis added.) The reason for this Rule is straightforward: “[T]he stay of mandate is entered solely to allow this Court time to consider a petition for certiorari.” Bell, 545 U.S.[]at 806 [125 S.Ct. 2825][.]
133 S.Ct. at 2550 (first and second alterations in original) (second emphasis added).
The Court’s explanation of the reason for the “default rule” makes plain the scope of Rule 41(d)(2)(D). WTien a stay of mandate is entered “solely” for the purpose of allowing the Court to consider a petition for certiorari, the stay has served its purpose as soon as the Court denies certiorari. In that case, the mandate must issue immediately. But there is a negative pregnant in the Court’s explanation. When a stay of mandate serves a purpose other than allowing the Court time to consider a petition for certiorari, the “default rule” does not apply.
If a stay is not entered for the sole purpose of allowing time for the Court to consider a petition for certiorari, the governing language is in Rule 41(b): “The court may shorten or extend the time.” Immediately before the passage from Bell, quoted above, the Court wrote, with respect to Rule 41(b):
While Rule 41(b) may authorize a court to stay the mandate after certiorari is denied, the circumstances where such a stay would be warranted are rare. See, *1063 e.g., First Gibraltar Bank, FSB v. Morales, 42 F.3d 895 (C.A.5 1995); Alphin v. Henson, 552 F.2d 1033 (C.A.4 1977).
545 U.S. at 806, 125 S.Ct. 2825.
In First Gibraltar and Alphin, cited with approval in Bell as examples of “rare” cases in which a stay was appropriate, the courts of appeals stayed the mandate after the Court denied certiorari. In both cases, there was a reason for the stay independent of the Supreme Court’s consideration of the petition for certiorari, based on something that had occurred before the filing of the Court’s denial. In First Gibraltar, the Fifth Circuit had stayed the mandate before the Court’s denial of certiorari not only to allow time for the Court to consider the petition for cer-tiorari. It had also stayed the mandate “for a reason independent of the petition for certiorari” — “to permit an en banc poll.” 42 F.3d at 897-98. In Alphin, the Fourth Circuit had stayed the mandate in order to allow the Court to consider a petition for certiorari. Four days after the Court denied certiorari, but before the order denying certiorari was received by the Fourth Circuit, that court stayed the mandate in order to decide the plaintiffs’ motion for leave to file a second petition for rehearing. 552 F.2d at 1034.
In the case now before us, we have both of these circumstances. We have continued to stay the mandate, despite the denial of certiorari, in order “to permit an en banc poll” (First Gibraltar), and we have done so in order to decide a motion for reconsideration (Alphin). The Court wrote in Bell that cases such as First Gibraltar and Alphin are “rare.” But they do exist, and First Gibraltar and Alphin demonstrate that the case now before us is one of them.
Our dissenting colleagues also contend that Henry has not satisfied the “extraordinary circumstances” test of Bell and Schad. See Dissent at 1070-71. We do not believe that the “extraordinary circumstances” test of Bell and Schad applies to this case. In Bell and Schad, the only basis for the stay was Rule 41(d)(2). The fact that there are reasons to stay proceedings other than for the purpose of allowing the Supreme Court to consider Henry’s petition for certiorari means that this case is governed instead by Rule 41(b), with the result that “extraordinary circumstances” within the meaning of Bell and Schad are not required. Our dissenting colleagues nonetheless contend that “extraordinary circumstances” are required, and that Bell and Schad compel us to issue the mandate.
In Bell, the Court reversed the Sixth Circuit, which had withheld its mandate “without entering a formal order” for more than five months after denial of a petition for rehearing of a denial of certiorari by the Court. 545 U.S. at 796, 804, 125 S.Ct. 2825. After having previously affirmed the district court’s denial of habeas relief in a capital case, the Sixth Circuit issued a new opinion vacating the district court’s decision and remanding for an evidentiary hearing two days before a scheduled execution and more than five months after the Court had denied the petition for rehearing of its denial of certiorari. Bell, 545 U.S. at 799, 801, 125 S.Ct. 2825; Schad, 133 S.Ct. at 2551. The Court held that the Sixth Circuit had abused its discretion for three interrelated reasons.
The Court first emphasized that the Sixth Circuit had not informed the parties that it was reconsidering its decision. On the assumption that the mandate had issued, the State of Tennessee scheduled an execution date, which, “in turn, led to various proceedings in state and federal court to determine Thompson’s present competency to be executed.” 545 U.S. at 805, 125 S.Ct. 2825. The Court wrote, “The *1064 Court of Appeals could have spared the parties and the state judicial system considerable time and resources if it had notified them that it was reviewing its original panel decision.” Id. Further, the Court noted that the Sixth Circuit had very little basis for reversing itself and issuing a new opinion. Id. at 806-13, 125 S.Ct. 2825. Finally, the Court concluded that the Sixth Circuit had not accorded sufficient respect to the state court judgment. The Court wrote, “By withholding the mandate for months — based on evidence that supports only an arguable constitutional claim— while the State prepared to carry out Thompson’s sentence, the Court of Appeals did not accord the appropriate level of respect to that judgment.” Id. at 813, 125 S.Ct. 2825; see also Schad, 133 S.Ct. at 2551 (summarizing the three reasons given in Bell).
In Schad, decided eight years later, the Court denied certiorari. After the Court’s denial, Schad moved in our court to stay the mandate to await the result of a pending en banc case. Id. at 2550. We declined to issue a stay on that ground. Id. Instead, on February 1, 2013, one month before the state ultimately planned to execute Schad, we sua sponte construed Schad’s motion as a motion to reconsider our prior denial of his motion to remand to the district court in light of Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). Id. We then granted the motion, as we had sua sponte construed it, and remanded to the district court for proceedings under Martinez. Id.
The Court in Schad described Bell, and then wrote that we had “similarly” abused our discretion in Schad. Id. at 2551. The Court pointed out that “months earlier,” in July 2012, we had denied a motion to remand to the district court to address the Martinez issue. Id. at 2250-51. The Court wrote that arguments made in favor of remand in February 2013 were “identical” to arguments we had rejected in July 2012. Id. at 2252. Further, when we decided in February 2013 not to issue the mandate, it had been ten months since the Court’s decision in Martinez, and nearly seven months since we had initially rejected Schad’s Martinez request. Id. at 2251-52.
The circumstances in this case are very different.
First, when the Court denied certiorari in Bell and Schad, there were no ongoing proceedings in the court of appeals of which the parties had notice. In Bell, one judge on the Sixth Circuit had decided to reread the record and had found evidence that had previously been overlooked. Based on that evidence, the three-judge panel reversed its prior denial of habeas and issued a new opinion two days before the scheduled execution. See Bell, 545 U.S. at 801, 125 S.Ct. 2825; Schad, 133 S.Ct. at 2551. More than five months had elapsed between the Court’s final disposition of the petition for certiorari and the Sixth Circuit’s issuance of the new opinion. It is unclear precisely when the Sixth Circuit judge reread the record. But the important point, emphasized by the Court, was that during the entire more-than-five-month period after the Court’s denial of the petition for rehearing of the denial of certiorari, no party was aware that the court of appeals was reconsidering its previous denial of habeas. Likewise, in Schad, the Court emphasized that there were no ongoing proceedings in our court when it denied certiorari. After the Court denied certiorari, the petitioner moved for a stay of the mandate, and we then remanded to the district court for a Martinez hearing.
By contrast, there were ongoing proceedings in this case, of which the parties were well aware, when the Supreme Court *1065 denied certiorari. We granted en banc rehearing in McKinney on March 12, 2014. Based on our grant of en banc rehearing in McKinney, Henry promptly moved for reconsideration of the panel’s previous denial of his petition for rehearing, seeking a stay to await the result in McKinney. The panel denied the motion on April 8. A judge of our court called the panel’s decision en banc on April 10, and the parties were made aware of the call. The State was asked to provide a response to Henry’s motion, which it did on May 2. The Supreme Court denied certiorari on June 9.
Second, there was substantial detrimental reliance in Bell, based on the lack of notice by the court that it was considering further action. The Court in Bell was sharply critical of the Sixth Circuit because its failure to enter a formal stay after the denial of certiorari misled the state into thinking that it could go forward with its scheduled execution date. On the assumption that there was no stay of the mandate, the parties conducted hearings in both state and federal court concerning the petitioner’s competency to be executed. 545 U.S. at 805, 125 S.Ct. 2825. By contrast, there has been no detrimental reliance based on lack of notice here. The state has been aware, from the beginning, of Henry’s desire for reconsideration in light of our grant of en banc rehearing in McKinney.
Third, there were substantial and unexcused delays in Bell and Schad. In Bell, more than five months passed between the Court’s final denial of certiorari and the issuance of the Sixth Circuit’s new opinion, with no notice to the parties. In Schad, we remanded to the district court to address the Martinez issue ten months after Martinez was decided, and seven months after we had initially denied a motion for a Martinez remand. By contrast, Henry moved promptly for a stay after en banc rehearing was granted in McKinney. The panel’s order denying Henry’s motion was called en banc two days after the order was entered. The parties were notified the following day. The Supreme Court did not deny certiorari until nearly two months later.
Fourth, there were no new facts or arguments in either Bell or Schad that justified the courts’ changes of heart. In Bell, the court had made a mistake by overlooking evidence, and one judge investigated and evaluated the case anew based on evidence that had been previously submitted in a motion to supplement the record. 545 U.S. at 799-800, 125 S.Ct. 2825. In Schad, we had already denied a Martinez motion, and no new Martinez-based argument caused the court to change its mind and grant the motion it had previously denied. By contrast, the argument made in Henry’s motion was a new argument, based on the grant of en banc rehearing in McKinney. Henry argued that consistency in the.application of law required that we await the outcome of our en banc rehearing in McKinney. This consistency argument had not been made previously. Indeed, it could not have been because en banc rehearing had not yet been granted.
Fifth, the relief awarded in Bell and Schad interrupted imminent executions. In Bell, the Sixth Circuit’s opinion reversing its denial of habeas relief was issued two days before the scheduled execution. Schad, 133 S.Ct. at 2551. In Schad, our order remanding to the district court for a Martinez hearing was entered just over a month before the state ultimately planned to execute Schad. Id. at 2550. In both cases, the relief interrupted, at a late date, an orderly process that was then underway. By contrast, there is no scheduled execution in Henry, and a stay of the mandate would not interrupt an orderly *1066 process. Indeed, the converse is true. If a stay of the mandate is not granted, the orderly en banc process that is now underway would be interrupted.
In short, this case is nothing like Bell or Schad. We did not stay the mandate for five months following the Supreme Court’s denial of a petition for rehearing of a denial of certiorari “without entering a formal order,” with no notice to the parties. See Bell, 545 U.S. at 796, 805, 125 S.Ct. 2825. We did not, after five months of such silence, issue a new opinion reversing course. See id. at 801, 125 S.Ct. 2825. We are not considering “identical” arguments that we had previously rejected. See Schad, 133 S.Ct. at 2552; see also Bell, 545 U.S. at 806, 125 S.Ct. 2825 (noting that the court of appeals had already rejected “the same arguments” that it later adopted). We are not, at the last minute, disrupting a scheduled execution in which the state has already invested considerable time and resources in preparation. See Schad, 133 S.Ct. at 2551.
Instead, there were ongoing proceedings in Henry, of which the parties were well aware and in which they were fully involved, when the Supreme Court denied certiorari. There have been no substantial, unexcused delays: Henry moved for reconsideration shortly after en banc rehearing was granted in McKinney. The panel’s order denying Henry’s motion was called en banc two days after the panel’s denial. The argument made in Henry’s motion for reconsideration was a new argument, based on the grant of en banc rehearing in McKinney — an argument that had not, and could not have, been made previously. Finally, no orderly execution process has been scheduled that we are disrupting at the last minute. If anything, if a stay of mandate is not continued, the orderly en banc process currently pending would be interrupted.
Because the relevant rule is Rule 41(b) rather than Rule 41(d)(2)(D), the “extraordinary circumstances” test of Bell and Schad does not apply to this case. The vast difference between the circumstances in Bell and Schad and those in this case demonstrate that those cases do not control. Instead, First Gibraltar and Alphin, both cited with approval in Bell, indicate that we properly exercised our authority under Rule 41(b).
A denial of a motion for reconsideration is, in ordinary circumstances, utterly routine. But the circumstances here are far from ordinary. A critical issue in Henry is whether an Eddings error is structural, requiring automatic reversal. This issue is common to a number of pending Arizona capital cases. The Henry panel treated an Eddings error as non-structural. The panel was unanimous, holding that any Eddings error was harmless under Brecht. Henry, 720 F.3d at 1089-91. No one called the panel’s decision en banc.
But then the landscape changed. We narrowly decided not to rehear en banc a second Eddings case, Poyson v. Ryan. We then voted to take en banc a third Eddings case, McKinney v. Ryan. McKinney was originally scheduled to be heard en banc in June, but we postponed the hearing until we could decide whether to take en banc yet a fourth Eddings case, Hedlund v. Ryan, 750 F.3d 793 (9th Cir.2014).
If we hold in McKinney that Eddings error is structural, it is possible, perhaps even likely, that Henry will be entitled to a new sentencing hearing. Panels in three other Arizona Eddings cases have stayed proceedings to await McKinney. Despite the fact that in Poyson the en banc call failed, the Poyson panel has stayed proceedings. The panel in Hedlund has now stayed proceedings. A separate panel has *1067 stayed proceedings in Clabourne v. Ryan, 745 F.3d 362 (9th Cir.2014).
The only panel that has not stayed proceedings is the Henry panel. If the panel’s order stands, Henry will be executed. He will be executed even if we hold en banc in McKinney that an Eddings error is structural. That is, Henry will be executed even if our law, established in McKinney, says that he should not be. There is an easy and procedurally proper way to avoid this result. We can stay proceedings in Henry, as we have in Poy-son and Claboume, to allow for the orderly and fair administration of our system of justice.
Concurrence in grant of rehearing en banc by Judge WILLIAM A. FLETCHER.