Judge TALLMAN,
with whom Judges O’SCANNLAIN, CALLAHAN, BEA, and IKUTA join,
dissenting from the grant of rehearing en banc:
If one is remembered for the rules one breaks, then our court must be unforgettable. By taking this capital habeas case en banc now — after certiorari has been denied by the Supreme Court and well after the deadline for en banc review by our court has passed — we violate the Federal Rules of Appellate Procedure and our own General Orders. We also ignore recent Supreme Court authority that has reversed us for doing the same thing in the past. No circuit is as routinely reversed for just this type of behavior. We ought to know better.
I
Here’s what happened: The panel issued its unanimous opinion denying federal habeas relief to Henry on June 19, 2013. Henry v. Ryan, 720 F.3d 1073 (9th Cir.2013). Henry sought panel rehearing and rehearing en banc. The warden filed a response. No judge called for a vote to take the case en banc, so the panel filed a unanimous order denying panel rehearing and rehearing en banc on November 1, 2013.
The mandate should have issued on November 8, 2013, pursuant to the clear text of Federal Rule of Appellate Procedure 41(b): “The court’s mandate must issue ... 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later.” Although the court may extend the time, Henry did not request a stay and none was granted.
The concurrence states that the Clerk’s office, “[a]cting on behalf of the panel,” stayed the mandate pursuant to Ninth Circuit Rule 22-2(e).[1] But no order staying the mandate was ever entered by the panel or by the Clerk’s office. Withholding issuance of the mandate is not the same as entering a stay order. Had the parties been told a stay was entered, the State surely would have asked the Supreme Court to vacate it once certiorari was denied.
Regardless, even if a stay had been entered pursuant to the Circuit Rule, Henry’s case still should have mandated within 90 days. Federal Rule of Appellate Procedure 41(d)(2)(B) states: “The stay must not exceed 90 days, unless the period is extended for good cause or unless the party who obtained the stay files a petition *1068 for the writ and so notifies the circuit clerk in writing within the period of the stay. In that case, the stay continues until the Supreme Court’s final disposition.” But Henry did not request and was not granted a stay extension for good cause. And he did not file a petition for writ of certio-rari within 90 days. Instead, he delayed even further by requesting and receiving a two-month extension of time from the Supreme Court.
Some five months after the denial of the petition for rehearing en banc — well after the deadline for en banc review had passed — Henry asked for full-court reconsideration. Henry’s request was based on McKinney v. Ryan, 745 F.3d 963 (9th Cir.2014), which had subsequently gone en banc. He hoped (and still hopes) that McKinney will change the circuit’s law in such a way as to nullify his death sentence. His motion was denied.
Henry next petitioned for certiorari. But he was not quite done with us. He filed a third motion for reconsideration, this time seeking relief from the panel.[2] Although the concurrence repeatedly characterizes this motion as a request to stay proceedings in light of McKinney, the motion was not a request for a stay. The motion was titled “Motion for Panel Reconsideration of Order Denying Petition for Panel Rehearing in Light of McKinney v. Ryan and Poyson v. Ryan” and it requested “reconsideration of the denial of [Henry’s] petition for panel rehearing.”[3] The motion was properly denied.[4] Henry v. Ryan, 748 F.3d 940 (9th Cir.2014).
Then things went wrong. A judge called for a vote on whether to take the order denying the motion for reconsideration en banc. I believe that the call was improper. The court should have rejected it. It didn’t.
Then, before the vote, on June 9, 2014, the Supreme Court denied Henry’s petition for certiorari. See Henry v. Ryan, — U.S. —, 134 S.Ct. 2729, — L.Ed.2d - (2014) (denying certiorari). We received notice the next day. Accordingly, our mandate should have issued immediately. It didn’t. We held our mandate (and hold it still).
The vote proceeded and was successful. Here we are.
II
Under our General Orders, we cannot take a case en banc the way we have taken this case en banc. There are only seven paths to an en banc vote. Each path is described in our General Orders. First, the panel that originally receives the case may call for an en banc vote. G.O. 5.2(b). This is the only path that does not have a deadline. The next five each involve an event that triggers a countdown of some limited number of days for an interested judge to call for an en banc vote. Those five triggering events are:
*1069 • The receipt of notification that a party has petitioned for the case to be heard en banc initially. G.O. 5.2(a).
• The denial by the panel of a petition for rehearing en banc. G.O. 5.4(b)(2) & (c)(1).
• The denial by the panel of a petition for rehearing by the panel. G.O. 5.4(b)(3).
• Entry of an order by the panel publishing a previously unpublished disposition. G.O. 5.4(c)(3).
• The panel’s substantive amendment of its previous disposition. G.O. 5.3(a).
Finally, there is a catch — all provision— General Order 5.4(c)(3). Under that provision, even when none of the five listed events occur, a judge can sua sponte call for an en banc vote, so long as the call is made within “seven days of the expiration of the time for filing a petition for panel rehearing or rehearing en banc.” G.O. 5.4(c)(3).
Per our General Orders, these are the only seven paths to take a case en banc. This case took none of them: it was not a panel call; it was too late to fall under the catch-all provision; and the event that triggered the call here isn’t any of the five triggering events described in the General Orders. Rather, it was the panel’s denial of Henry’s third motion to reconsider. Put simply, the call came too late. The clock had run. And our rules don’t permit us to extend the en banc window to resurrect the opportunity by taking en banc the denial of an improper motion to reconsider.
In an effort to justify the propriety of the call, the concurrence relies on General Order 6.11 and Ninth Circuit Rule 27-10(b). But neither rule is availing. By its express terms, General Order 6.11 applies only to orders issued by motions panels. See G.O. 6.11 (“Any motion or petition seeking en banc review of an order issued by a motions panel shall be processed as a motion for reconsideration en banc.”). It does not expressly permit en banc review of orders, like the one here, that are issued by merits panels. Nor does it appear that Ninth Circuit Rule 27-10(b) applies to motions for reconsideration of merits panel orders. See Ninth Circuit Rule 27-10(b) (“The rule applies to any motion seeking review of a motions panel order ...”). Even if it did, Henry is only entitled to one motion for reconsideration under the Rule. See id. (“A party may file only one motion for clarification or reconsideration of a panel order.”). This is Henry’s third. This court cannot call en banc an order denying a motion Henry was not even permitted to make.
The concurrence also relies on Federal Rule of Appellate Procedure 35(a)(1) to assert that en banc reconsideration is appropriate when “necessary to secure or maintain uniformity of the court’s decisions.” While true, the concurrence does not contend, nor does the Rule provide, that we can call orders issued by a merits panel en banc.
My reading of these rules may call into question the propriety of how the court has treated some past cases. Until Henry, the complications of the position promoted by the concurrence were not clear. These potential complications are glaring. If the en banc panel is only permitted to revisit the challenged order, as the concurrence contends, then its authority would be limited to forcing the three-judge panel to reconsider its prior denial of panel rehearing. That isn’t likely to achieve much; reversing the panel order denying reconsideration doesn’t allow the en banc court to reach what the concurrence contends is the “critical issue” of “whether an Eddings error is structural, requiring automatic reversal.” To reach that issue, it must do more. It must change the underlying panel opinion or go beyond the motion that *1070 triggered the call and grant Henry a stay — exceeding the concurrence’s self-proclaimed and unenforceable limits as to the scope of its review. Instead, the veiled purpose of this en banc call, at least through the eyes of the concurrence, is to revisit the panel’s opinion after McKinney is decided. But that clock has long since run.
Let’s label this en banc challenge for what it is: An untimely and improper attack on the panel disposition. By taking the case en banc, we break our own rules in a way that threatens our ability to process cases. See Hollingsworth v. Perry, 558 U.S. 183, 196-97, 130 S.Ct. 705, 175 L.Ed.2d 657 (2010) (noting that a court’s failure to comply with neutral rules and principles can “compromise the orderly, decorous, rational traditions that courts rely upon to ensure the integrity of their own judgments”).
Critically, there is no need for such exceptional action. Contrary to the concurrence’s representation, our denial of Henry’s untimely petition would not necessarily result in his execution. The Supreme Court of Arizona would still have to issue a warrant of execution. That court might wait for our en banc decision in McKinney. Even if the warrant issued, Henry would be entitled to seek a stay and other relief from the Arizona courts, and if that failed, from the federal courts, including ours. Granting an untimely petition for rehearing based on potential future changes in the law in unrelated cases interferes with the ordinary processes for habeas petitions, which provide adequate alternatives for a defendant to raise meritorious issues.
Ill
Our General Orders aren’t our only victim. We have also completely ignored controlling Supreme Court authority that tells us what we are obligated to do.
“The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed.” Fed. R.App. P. 41(d)(2)(D). Even the author of the concurrence himself has previously acknowledged in the AEDPA context that the “initial” denial of certiorari is the “effective” and “final” denial of certiorari. See United States v. Buckles, 647 F.3d 883, 887 (9th Cir.2011) (Fletcher, J.) (“Finality attaches when [the Supreme Court] ... denies a petition for a writ of certiorari.” (quoting Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003))). The Supreme Court denied Henry’s certiorari petition on June 9, 2014. Henry v. Ryan, — U.S. —, 134 S.Ct. 2729, — L.Ed.2d — (2014). Now, nearly three months later, we still withhold the mandate.
And by doing so, we defy the rule of law. Our defiance is well and recently practiced. Just last year, in Ryan v. Schad, the Supreme Court held that we abused our discretion by doing what we repeat now— failing to issue the mandate in a death penalty case following the denial of certiorari. — U.S. —, 133 S.Ct. 2548, 2551-52, 186 L.Ed.2d 644 (2013). The sting of that rebuke still lingers, yet we act as though we cannot feel it.
The concurrence asserts that Rule 41(b) provides an initial avenue around our obligation to issue the mandate in this case. It doesn’t. Although that rule permits the court to “shorten or extend the time” to issue the mandate, it is not a carte blanche to withhold the mandate indefinitely or to ignore more specific rules that apply here. The ability to “shorten or extend the time” is permissive. Fed. RApp. P. 41(b) (using the word “may”). A court must take affirmative action to avoid the default one- *1071 week time frame for issuance of the mandate. See id. To the degree that the concurrence contends that the court entered a stay, it misconstrues the record. No stay was ever entered here. Indeed, we have never issued any order concerning our mandate in this case. The default rule should have been applied with the mandate issuing on November 8, 2013.
Moreover, the concurrence cannot be correct even under its own theory that Rule 41(d)(2)(D) only applies when a stay is entered for the sole purpose of permitting Supreme Court review. This theory requires the court to have stayed the mandate pending the denial of certiorari and to again have stayed the mandate pending the en banc vote on whether to take the order denying reconsideration en banc. See, e.g., First Gibraltar Bank, FSB v. Morales, 42 F.3d 895, 896-98 (5th Cir.1995) (per curiam) (involving entry of an actual stay); Alphin v. Henson, 552 F.2d 1033, 1035-36 (4th Cir.1977) (per curiam) (same). But no stays were ever entered. So, if the concurrence’s legal position is right, the mandate still should have issued. The concurrence’s position essentially boils down to the principle that by doing nothing (e.g., by failing to enter a stay as well as failing to issue the mandate), the court can do whatever it wants.
And Rule 41(d)(2)(D) itself does not provide an out by way of an unwritten exception for “extraordinary circumstances.” The Supreme Court has twice declined to adopt that exception. Schad, 133 S.Ct. at 2549-51; Bell v. Thompson, 545 U.S. 794, 803, 125 S.Ct. 2825, 162 L.Ed.2d 693 (2005). Instead, it has twice assumed that the exception exists, but then found its high standard unmet. Schad, 133 S.Ct. at 2550-51; Bell, 545 U.S. at 803-04, 125 S.Ct. 2825. And it would have to be a high standard: “Deviation from normal mandate procedures is a power ‘of last resort, to be held in reserve against grave, unforeseen contingencies.’ ” Schad, 133 S.Ct. at 2551 (quoting Calderon v. Thompson, 523 U.S. 538, 550, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)).[5]
It is hard to imagine how Henry’s case could meet this standard given that it was unmet in Schad and Bell. Those cases— both capital — demonstrate that a death sentence alone does not satisfy the extraordinary circumstances standard. See id. at 2550; Bell, 545 U.S. at 803, 125 S.Ct. 2825. And circuit law is no help. The few circuit cases that have arguably found extraordinary circumstances were not even habeas cases. See Bryant v. Ford Motor Co., 886 F.2d 1526, 1529-30 (9th Cir.1989) (involving a change in statutory law that occurred before the denial of certiorari); First Gibraltar Bank, 42 F.3d at 896-98 (same); Alphin, 552 F.2d at 1035-36 (same). So they didn’t involve the same “finality and comity concerns” at issue in Schad and Bell. See, e.g., Schad, 133 S.Ct. at 2551 (“[Fjinality and comity concerns, based in principles of federalism, demand that federal courts accord the appropriate level of respect to state judgments.” (internal quotation marks omitted)).
Moreover, they all share something that Henry’s case lacks — they all involved a change in statutory law that occurred before the denial of certiorari. See Bryant, 886 F.2d at 1529-30; First Gibraltar Bank, 42 F.3d at 896-98; Alphin, 552 F.2d at 1035-36. Those changes gave rise to *1072 extraordinary circumstances. Here, the law hasn’t changed at all. Presumably, my colleagues who voted for further delay merely foresee or perhaps hope that, with McKinney, it will.[6]
Never before has any court deemed such a hope sufficiently extraordinary. And it can’t be. The law changes all the time.[7] Nothing so ordinary could be extraordinary. So our court, by voting to rehear this case ultra vires, is bold indeed. Not only do we ignore Schad and Bell, but we also extend extraordinary circumstances beyond any previous authority.
IV
Moreover, unless the en banc panel issues a formal stay of the mandate, our unorthodox actions might very well evade Supreme Court review. If the en banc panel issues such a stay, then Arizona could seek Supreme Court review of the stay. If it doesn’t, then our failure to issue the mandate may escape review for an indeterminate period of time while we await oral argument and a decision from the en banc panel in McKinney many months from now.
V
Our court has succumbed to the temptation to hold this case, already in its third decade, even longer. Some of us may be driven by opposition to the death penalty. Or some may feel that Henry should get the benefit, if any, of McKinney because a third capital defendant, Poyson, was granted a stay pending McKinney’s resolution. Poyson v. Ryan, 743 F.3d 1185, 1187 (9th Cir.2013).
Whatever they are, motivations are beside the point. We should follow the law. Instead, we lay flame to orderly case-processing rules, comity due to state court judgments, and principles of finality. “[Fire’s] real beauty is that it destroys responsibility and consequences. A problem gets too burdensome, then into the fire with it.” Ray Bradbury, Farenheit J/.51 109 (Simon & Schuster 2012). We should be more cautious.
I respectfully dissent.

. Ninth Circuit Rule 22-2(e) states: "When the panel affirms a denial or reverses a grant of a first petition or motion [in a capital case], it shall enter an order staying the mandate pursuant to FRAP 41(b).” But this language appears under the heading "Stays of Execution” and is itself ambiguous.

. In addition to violating principles of comity, the motion was untimely under Ninth Circuit Rule 27-10(a)(l). It was also improper because it amounted to Henry’s third motion to reconsider the panel decision, which is prohibited under Ninth Circuit Rule 27-10(b).

. The closest Henry came to requesting a stay in the body of the motion is the following sentence: ”[T]he Court’s recent decision in Poyson that amended its previous denial of panel rehearing and stayed the case pending resolution in McKinney provides support for this panel to do the same.” In his conclusory “wish list,” he expressed his desire that the panel, after granting the motion to reconsider, would vacate his petition for panel rehearing and grant a stay pending McKinney.

.One judge dissented from the order denying the motion.

. In Thompson, we were reversed for sua sponte recalling our mandate in a capital case to revisit the merits of an earlier three judge panel opinion denying habeas relief. The Supreme Court held that an appellate court abuses its discretion unless it acts to avoid a miscarriage of justice as defined in Supreme Court habeas corpus jurisprudence. 523 U.S. at 558, 118 S.Ct. 1489.

. Of course, this hope assumes that Henry’s case will be controlled by the en banc court's decision in McKinney. However, there are a number of factors that distinguish the two cases. Contrary to the concurrence's suggestion, the panel majority does not believe that there was Eddings error at all in Henry's case. But we will leave that discussion for another day.

. The concurrence asserts that "Henry’s motion was a new argument.” But it was not. Henry raised his Eddings claim in his brief, in his petition for rehearing en banc, and in his petition for certiorari. The only "new” development was our decision to grant rehearing en banc in McKinney and the panel's decision to stay proceedings in Poyson. But these developments in unrelated cases do not justify our retention of this appeal after Henry's petition for rehearing en banc has been denied and the Supreme Court has denied certiorari.